[No. B215486. Second Dist., Div. Five. Oct. 12, 2010.]

FIREMAN'S FUND INSURANCE COMPANY et al., Petitioners, v. WORKERS' COMPENSATION APPEALS BOARD and CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Respondents.

COUNSEL

Lewis Brisbois Bisgaard & Smith, Roberta S. Frizell; Hayes Davis Bonino Ellingson McLay & Scott, Hayes Scott Bonino Ellingson & McLay and Mark G. Bonino for Petitioners.

Guilford Steiner Sarvas & Carbonara, Richard E. Guilford; Kegel, Tobin & Truce and Stephen W. Cooper for Respondent California Insurance Guarantee Association.

No appearance for Respondent Workers' Compensation Appeals Board.

OPINION

ARMSTRONG, J.—Pursuant to an agreement, Rocket Science Laboratories (Rocket Science) provided employees for film production, and Payday, Inc. (Payday), agreed to be the employer and make payments to employees including workers' compensation. Thomas Colamaria was hired as a supervising producer for *Temptation Island*, and injured his back during the production and claimed workers' compensation benefits. Payday was insured for workers' compensation by Reliance National Indemnity Company (Reliance) and Rocket Science was insured for workers' compensation by Fireman's Fund Insurance Company (Fireman's Fund). Reliance became insolvent and workers' compensation was provided by the California Insurance Guarantee Association (CIGA). CIGA is an association of insurers licensed in California. (*Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 786 [244 Cal.Rptr. 655, 750 P.2d 297] (*Isaacson*).) Rocket Science and Fireman's Fund asked to be dismissed as defendants by the Workers' Compensation Appeals Board (WCAB). The WCAB denied dismissal, finding

that Payday and Rocket Science were jointly and severally liable employers for workers' compensation, that the Fireman's Fund policy language was clear and provided unlimited coverage without the required exclusion for employees like Colamaria, and that CIGA was not liable if there was other insurance under Insurance Code section 1063.1, subdivision (c)(9). CIGA pays "covered claims" of insolvent member insurers pursuant to Insurance Code section 1063.1, subdivision (c)(1). (*Isaacson, supra,* 44 Cal.3d at pp. 786–787.) " 'Covered claims' does not include (A) any claim to the extent it is covered by any other insurance of a class covered by this article available to the claimant . . . ." (Ins. Code, § 1063.1, subd. (c)(9).)

Fireman's Fund and Rocket Science petitioned for writ of review. Petitioners contend that they have no liability and should be dismissed because Payday obtained workers' compensation coverage from Reliance pursuant to the agreement with Rocket Science as contemplated by Labor Code section 3602, subdivision (d).[1] Petitioners also contend that they intended that employees like Colamaria would be covered by the workers' compensation policy provided by Reliance, and not Fireman's Fund, under section 3602, subdivision (d).

We conclude that Payday and Rocket Science are jointly and severally liable employers to employees like Colamaria for workers' compensation, and that the liability of Rocket Science and Fireman's Fund is not extinguished by compliance with section 3602, subdivision (d). Section 3602, subdivision (d) expressly provides that complying employers shall not be subject to civil, criminal, or other penalties or tort liability, which does not

---

[1] Labor Code section 3602, subdivision (d) states: "For the purposes of this division, including Sections 3700 and 3706, an employer may secure the payment of compensation on employees provided to it by agreement by another employer by entering into a valid and enforceable agreement with that other employer under which the other employer agrees to obtain, and has, in fact, obtained workers' compensation coverage for those employees. In those cases, both employers shall be considered to have secured the payment of compensation within the meaning of this section and Sections 3700 and 3706 if there is a valid and enforceable agreement between the employers to obtain that coverage, and that coverage, as specified in subdivision (a) or (b) of Section 3700, has been in fact obtained, and the coverage remains in effect for the duration of the employment providing legally sufficient coverage to the employee or employees who form the subject matter of the coverage. That agreement shall not be made for the purpose of avoiding an employer's appropriate experience rating as defined in subdivision (c) of Section 11730 of the Insurance Code. [¶] Employers who have complied with this subdivision shall not be subject to civil, criminal, or other penalties for failure to provide workers' compensation coverage or tort liability in the event of employee injury, but may, in the absence of compliance, be subject to all three."

All further references to statute are to the Labor Code unless otherwise stated.

include employer joint and several liability for workers' compensation. Section 3602, subdivision (d) also does not preclude Rocket Science from having applicable workers' compensation coverage under the Fireman's Fund policy. We also conclude that coverage under the Fireman's Fund policy is clear and unlimited without the statutory exclusion for employees like Colamaria, and that the policy provisions control. We affirm the WCAB's decision and remand the matter for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to an agreement in 1994, the predecessor of Rocket Science agreed to provide employees for film production and Payday agreed to be the employer and make all payments to employees, including workers' compensation, for 2 percent of the gross payroll. In 2000, Rocket Science hired Thomas Colamaria as a supervising producer for the production of *Temptation Island* off the coast of Belize. Colamaria was paid by Payday. Colamaria injured his back during the production on September 17, 2000, and October 2, 2000, and filed claims for workers' compensation. Payday was insured for workers' compensation by Reliance and Rocket Science was insured for workers' compensation by Fireman's Fund. Reliance became insolvent and CIGA filed an appearance as a defendant.

The parties proceeded to trial on the issues of employment and insurance coverage and liability before the workers' compensation administrative law judge (WCJ). Ron Renaud, the president of Payday from August 1994 to August 2005, testified that the 1994 agreement was the operative contract between Payday and Rocket Science. Renaud testified further that Payday paid the employees for *Temptation Island* based on timecards, but did not hire them or have control over their duties. Renaud intended to provide the services specified in the agreement, including insuring the employees for workers' compensation. Renaud also testified that some production companies have their own employees covered under Payday's workers' compensation insurance. Renaud did not know whether Rocket Science was covered by other insurance during the production of *Temptation Island*.

Trial was continued, and Colamaria and CIGA entered into stipulations with request for award that temporary disability indemnity would be paid pending resolution of employment and reimbursement. Colamaria and CIGA subsequently entered into a compromise and release settlement agreement for $127,308, with CIGA reserving any right to contribution or reimbursement

from any and all defendants. CIGA also filed a petition for contribution to recover all benefits paid under Insurance Code section 1063.1, subdivision (c)(9). Rocket Science and Fireman's Fund filed a petition to be dismissed as defendants, contending in part that they did not intend insurance coverage for employees like Colamaria under section 3602, subdivision (d).

The WCJ issued findings of fact finding that Payday was the general employer and Rocket Science the special employer of Colamaria when he injured his back. The WCJ also denied the motion for dismissal by Fireman's Fund and Rocket Science, finding that because their liability was joint and several, the policy did not contain an express exclusion of coverage for special employees like Colamaria, and that the claim was covered by other insurance and not CIGA under Insurance Code section 1063.1, subdivision (c)(9). In the opinion on decision, the WCJ explained that the findings were based on the continuing agreement between Payday and Rocket Science, the Reliance and Fireman's Fund workers' compensation insurance policies, Renaud's testimony, the depositions of Colamaria, Jean-Michel Michenaud, and Richard Christopher Cowan (the partners of Rocket Science), and Matt Laviano, the executive director of business and legal affairs for Rocket Science.

Fireman's Fund petitioned the WCAB for reconsideration, contending that Payday and Rocket Science had complied with section 3602, subdivision (d) by obtaining workers' compensation coverage from Reliance pursuant to the agreement, which extinguished Rocket Science's liability and acted as an express exclusion of coverage for special employees like Colamaria. Consistent with the Legislature's intent in enacting section 3602, subdivision (d), Payday and Rocket Science intended sole coverage by the Reliance policy as indicated by the agreement and Cowan's deposition testimony, and not duplicate coverage under the Fireman's Fund policy. Therefore, the Fireman's Fund policy was not other insurance under Insurance Code section 1063.1, subdivision (c)(9), so that the motion for dismissal should have been granted.

In the report on reconsideration, the WCJ added that under *County of Los Angeles v. Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 391, 405–406 [179 Cal.Rptr. 214, 637 P.2d 681] (county general employer which provided special employer special employee jointly and severally liable for workers' compensation, solely liable for special employee on county payroll at time of injury as self-insured under Ins. Code, § 11663) and *Kowalski v. Shell Oil Co.* (1979) 23 Cal.3d 168, 175 [151 Cal.Rptr. 671, 588 P.2d 811] (contract not determinative of special employment where no control over employee), it is well settled that Payday as the general employer and Rocket Science as the special employer are jointly and severally liable to their injured special employees like Colamaria for workers' compensation. The WCJ noted that

liability between general and special employers and their insurers for injuries to special employees normally follows payroll. However, Reliance was in liquidation and CIGA's liability was limited under Insurance Code section 1063.1, subdivision (c). The WCJ explained further that the Fireman's Fund policy does not contain an express exclusion of coverage for special employees like Colamaria, or any reference to the agreement between Payday and Rocket Science. The Fireman's Fund policy language is also clear, explicit, broad, unqualified and unambiguous, so that there was no need to go outside its provisions for interpretation of coverage. The WCJ concluded that the Fireman's Fund policy is other insurance under Insurance Code section 1063.1, subdivision (c)(9), and that reconsideration and the motion to dismiss should be denied.

The WCAB adopted the WCJ's findings and report based on the record and denied Fireman's Fund's petition for reconsideration.

Fireman's Fund and Rocket Science petitioned for writ of review and this court initially denied the petition. Fireman's Fund and Rocket Science petitioned the Supreme Court for review. The Supreme Court granted review, with directions for this court to vacate its order denying the petition for writ of review and issue writ of review to be heard when ordered on calendar. Accordingly, this court granted writ of review and set the matter to be heard.

## CONTENTIONS

Fireman's Fund and Rocket Science contend that by securing workers' compensation coverage under the Reliance policy pursuant to the agreement, they complied with section 3602, subdivision (d) and extinguished their joint and several liability to special employees like Colamaria. Fireman's Fund and Rocket Science contend further that under the agreement and section 3602, subdivision (d), they intended the Reliance policy and not the Fireman's Fund policy to provide workers' compensation coverage to special employees like Colamaria. Therefore, the Fireman's Fund policy is not other insurance coverage, CIGA is liable under Insurance Code section 1063.1, subdivision (c)(1), and the WCAB should have granted Fireman's Fund and Rocket Science's petition for dismissal. Fireman's Fund and Rocket Science also contend that under Insurance Code section 11663, Reliance became solely liable at the time of injury because Colamaria was on Payday's payroll. Insurance Code section 11663 states in part, "As between insurers of general and special employers, one which insures the liability of the general employer is liable for the entire cost of compensation payable on account of injury occurring in the course of and arising out of general and special employments unless the special employer had the employee on his or her payroll at the time of injury, in which case the insurer of the special employer is solely liable."

However, the argument regarding Insurance Code section 11663 was not raised in the petition for reconsideration or for review before the Supreme Court and is waived.[2]

## DISCUSSION

### I. *Standard of review*

#### A. *Factual findings*

A decision by the WCAB that is based on factual findings supported by substantial evidence is affirmed by the reviewing court. (*Western Growers Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 233 [20 Cal.Rptr.2d 26].)

#### B. *Interpretation of statutes*

■ Interpretation of governing statutes or application of the law to undisputed facts is decided de novo by the appellate court, even though the WCAB's construction is entitled to great weight unless clearly erroneous. (*Boehm & Associates v. Workers' Comp. Appeals Bd.* (1999) 76 Cal.App.4th 513, 515–516 [90 Cal.Rptr.2d 486]; *Ralphs Grocery Co. v. Workers' Comp. Appeals Bd.* (1995) 38 Cal.App.4th 820, 828 [45 Cal.Rptr.2d 197].) When interpreting statutes, the Legislature's intent should be determined and given effect. Legislative intent is generally determined from the plain or ordinary meaning of the statutory language. The statute's every word and provision should be given effect so that no part is useless, deprived of meaning or

---

[2] Section 5904 states, "The petitioner for reconsideration shall be deemed to have finally waived all objections, irregularities, and illegalities concerning the matter upon which the reconsideration is sought other than those set forth in the petition for reconsideration." See also *Heath v. Worker's Comp. Appeals Bd.* (1967) 254 Cal.App.2d 235 [62 Cal.Rptr. 139] (argument apportionment not supported by physician's erroneous medical history waived although apportionment generally raised).

Even if not waived, CIGA is not an insurer and its liability is determined by Insurance Code section 1063.1 et seq. (*Isaacson, supra,* 44 Cal.3d at pp. 786–787.) Insurance Code section 11663 also does not extinguish employer joint and several liability at the time of injury according to *McFarland v. Voorheis-Trindle Co.* (1959) 52 Cal.2d 698, 702–703 [343 P.2d 923] (workers' compensation not exclusive remedy where no right of control over alleged special employee).

Fireman's Fund and Rocket Science also failed to raise on reconsideration or before the Supreme Court the contention that CIGA is collaterally estopped from relitigating issues decided against it in *General Casualty Ins. v. Workers' Comp. Appeals Bd.* (July 25, 2005, B167017) review denied and opinion ordered not published October 12, 2005, S137087 (CIGA liable where coverage of special employee not intended under agreements and § 3602, subd. (d) and statutory exclusionary endorsement not required), which is permitted under California Rules of Court, rule 8.1115(b)(1). Thus, the issue is waived under section 5904 and *Heath.*

contradictory. Interpretation of the statute should be consistent with the purpose of the statute and statutory framework. (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387–388 [20 Cal.Rptr.2d 523, 853 P.2d 978] (*DuBois*); *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299] (*Lungren*); *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 223, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Young v. Gannon* (2002) 97 Cal.App.4th 209, 223 [118 Cal.Rptr.2d 187] (*Young*).) ■ Generally, the law in workers' compensation is liberally construed to extend benefits to industrially injured employees. (§ 3202; *Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1065 [40 Cal.Rptr.2d 116, 892 P.2d 150].)

■ Where the meaning of statutory language is uncertain, rules of construction or legislative history may aid in determining legislative intent. (*DuBois, supra,* 5 Cal.4th at pp. 387–388, 393; *Lungren, supra,* 45 Cal.3d at p. 735.) Even if the statutory language is clear, a court is not prohibited from considering legislative history in determining whether the literal meaning is consistent with the purpose of the statute. (*Lungren, supra,* 45 Cal.3d at p. 735; *Young, supra,* 97 Cal.App.4th at p. 223.) In enacting a statute, the Legislature is deemed to have been aware of existing statutes and judicial interpretations. (*Young, supra,* 97 Cal.App.4th at p. 223.)

### C. *Interpretation of contracts*

■ The WCAB is authorized to interpret contracts or insurance policies to determine coverage in workers' compensation. (§§ 133, 5275; *California Compensation & Fire Co. v. Industrial Acci. Com.* (1965) 62 Cal.2d 532 [42 Cal.Rptr. 845, 399 P.2d 381].) Even though interpretation of a written instrument could be characterized as a question of fact, it is really a question of law and an independent function of the reviewing court, unless interpretation turns on the credibility of extrinsic evidence. (*E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 470 [9 Cal.Rptr.3d 701, 84 P.3d 385] (*E.M.M.I.*); *Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 [90 Cal.Rptr.2d 647, 988 P.2d 568] (*Palmer*); *Ponder v. Blue Cross of Southern California* (1983) 145 Cal.App.3d 709, 716–717 [193 Cal.Rptr. 632] (*Ponder*).)

### 1. *General contract rules*

■ Contracts are interpreted so as to give effect to the mutual intention of the parties at the time of contracting, to the extent ascertainable and lawful. (Civ. Code, § 1636; *E.M.M.I., supra,* 32 Cal.4th at p. 470; *Hess v. Ford Motor*

*Co.* (2002) 27 Cal.4th 516, 524 [117 Cal.Rptr.2d 220, 41 P.3d 46]; *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37 [36 Cal.Rptr.2d 100, 884 P.2d 1048] (*La Jolla Beach & Tennis Club*).) The mutual intent of the parties is ascertained from the contract language, which controls if clear and explicit. (Civ. Code, §§ 1638, 1639; *Palmer, supra,* 21 Cal.4th at p. 1115; *La Jolla Beach & Tennis Club, supra,* 9 Cal.4th at p. 37.) Where necessary, a contract may be interpreted by reference to the circumstances under which it was made or the matter to which it relates. (Civ. Code, § 1647; *Hess, supra,* 27 Cal.4th at p. 524; *La Jolla Beach & Tennis Club, supra,* 9 Cal.4th at p. 37.) Several related contracts may be interpreted together, if between the same parties and part of substantially the same transaction. (Civ. Code, § 1642.) Extrinsic or parol evidence may be used to explain ambiguity, context or related matter. (*Kavruck v. Blue Cross of California* (2003) 108 Cal.App.4th 773, 782 [134 Cal.Rptr.2d 152] (*Kavruck*).)

### 2. *Special features and rules of insurance policies*

■ While insurance policies are contracts to which the ordinary rules of contract interpretation apply (*Palmer, supra,* 21 Cal.4th at p. 1115; *La Jolla Beach & Tennis Club, supra,* 9 Cal.4th at p. 37), they also have special features and rules. If a claim does not fall within the terms of the insuring clauses, coverage does not exist. (*Palmer, supra,* 21 Cal.4th at pp. 1115–1116.) An insurance policy may also have specific clauses excluding coverage, which generally follow insuring clauses and should be conspicuous and plain, and are to be clear and construed narrowly. (See *E.M.M.I., supra,* 32 Cal.4th at p. 471 [policy excluding theft of jewelry from vehicle unless insured in or upon vehicle ambiguous and covers insured within two feet of vehicle]; *Ponder, supra,* 145 Cal.App.3d at pp. 718–720 [exclusion of temporomandibular joint syndrome in subpart of health policy entitled "General Limitations" not conspicuous, plain or clear to policyholder].)

### II. *CIGA*

■ CIGA's powers, duties and liabilities are governed by Insurance Code section 1063.1 et seq. (*Isaacson, supra,* 44 Cal.3d at p. 786.) CIGA is an involuntary unincorporated association of insurers admitted in California, and collects premiums from its member insurers to the extent necessary to pay statutorily defined "covered claims" on behalf of insolvent insurers. (Ins. Code, §§ 1063.1, 1063.2, 1063.5; *Isaacson, supra,* 44 Cal.3d at pp. 786–787; *Denny's Inc. v. Workers' Comp. Appeals Bd.* (2003) 104 Cal.App.4th 1433,

1438 [129 Cal.Rptr.2d 53]; *Industrial Indemnity Co. v. Workers' Comp. Appeals Bd.* (1997) 60 Cal.App.4th 548, 556 [70 Cal.Rptr.2d 295].) CIGA is not an insurer which issues policies and assumes contractual obligations or collects premiums and makes profits, and does not stand in the shoes of the insolvent insurer for all purposes. (*Isaacson, supra,* 44 Cal.3d at pp. 786–787; *Denny's, supra,* 104 Cal.App.4th at p. 1438; *Industrial Indemnity, supra,* 60 Cal.App.4th at p. 556.) CIGA was created as a last resort of limited financial protection for insureds and the public, and is not a fund for insurance companies or self-insureds. (*Denny's, supra,* 104 Cal.App.4th at pp. 1438, 1441.) Although workers' compensation insurance is covered by CIGA statutes (Ins. Code, § 1063, subd. (a); *Denny's, supra,* 104 Cal.App.4th at p. 1439), CIGA is not liable where a solvent insurer or self-insured employer is jointly and severally liable for the claim under the Labor Code. (Ins. Code, § 1063.1, subd. (c)(9); *Denny's, supra,* 104 Cal.App.4th at pp. 1438–1439 [CIGA not liable under Ins. Code, § 1063.1, subd. (c)(9) where insolvent insurer 80 percent and self-insured employer 20 percent jointly and severally liable for cumulative injury period under § 5500.5]; *Industrial Indemnity, supra,* 60 Cal.App.4th at p. 557 [CIGA not liable under Ins. Code, § 1063.1, subd. (c)(9) where solvent insurers jointly and severally liable for cumulative injury period under § 5500.5].)

III. *Section 3602, subdivision (d) does not extinguish joint and several liability*

Petitioners contend that because Payday agreed to provide workers' compensation insurance for the employees it provided to Rocket Science, and Payday in fact secured that coverage from Reliance as contemplated by section 3602, subdivision (d), Rocket Science fulfilled its workers' compensation obligation to special employees like Colamaria under section 3700[3] and *La Jolla Beach & Tennis Club, supra,* 9 Cal.4th at page 36 (no coverage or duty to defend under workers' compensation policy for civil suit alleging wrongful termination in violation of public policy). They contend that by complying with section 3700, Rocket Science also extinguished its liability to special employees like Colamaria for workers' compensation under *Employers Mutual Liability Ins. Co. v. Tutor-Saliba Corp.* (1998) 17 Cal.4th 632, 638–639 [71 Cal.Rptr.2d 851, 951 P.2d 420] (*Employers Mutual*) (remanded to determine whether subcontract provided for attorney's fees in litigation

---

[3] Section 3700 states in relevant part: "Every employer except the state shall secure the payment of compensation in one or more of the following ways: [¶] (a) By being insured against liability to pay compensation by one or more insurers duly authorized to write compensation insurance in this state."

between subcontractor's workers' compensation insurer and defendant general contractor). They argue that the Fireman's Fund policy is not other insurance pursuant to the coverage's promise to pay for insured liability under *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 16 [44 Cal.Rptr.2d 370, 900 P.2d 619] (no coverage for emotional distress of minority shareholder due to shareholder dispute and uncovered economic loss under coverage and exclusion clauses of company commercial general liability policy), and an exclusionary endorsement for special employees like Colamaria is not required.

## A. *The statutory language*

In order to determine whether joint and several liability to special employees for workers' compensation is extinguished under section 3602, subdivision (d), we must determine the Legislature's intent and begin by considering the plain or ordinary meaning of the statutory language. Petitioners argue that section 3602, subdivision (d) states several times that compliance with the statute satisfies the employer's obligation to secure the payment of compensation under section 3700. However, section 3602, subdivision (d) expressly provides that "Employers who have complied with this subdivision shall not be subject to civil, criminal, or other penalties for failure to provide workers' compensation coverage or tort liability." As CIGA points out, section 3602, subdivision (d) specifies the liabilities employers avoid for compliance with the statute. The Legislature did not include joint and several liability to employees for workers' compensation.

Petitioners also contend that by agreeing with Payday and securing the payment of compensation by Reliance under sections 3602, subdivision (d) and 3700, Rocket Science extinguished its liability to special employees like Colamaria for workers' compensation under *Employers Mutual*. However, *Employers Mutual* only discussed general workers' compensation and insurance principles, and did not address the effect of securing payment of compensation under section 3602, subdivision (d). (*Employers Mutual, supra*, 17 Cal.4th at pp. 637–639.) Cases are not authority for issues not considered or ruled upon. (See *Ferguson v. Workers' Comp. Appeals Bd.* (1995) 33 Cal.App.4th 1613, 1624 [39 Cal.Rptr.2d 806].) Moreover, *Employers Mutual* cited Witkin, which states, "Employers who comply with the insurance requirement [citation] are relieved of liability for compensation, and the insurance carrier assumes liability." (2 Witkin, Summary of Cal. Law (9th ed. 1987) Workers' Compensation, § 137, p. 708.) Witkin explained that a workers' compensation insurer may assume the employer's liability under

sections 3755,[4] 3757,[5] and 3759,[6] and the employer's rights are then subrogated to the insurer under Insurance Code section 11662.[7] There is no allegation by petitioners or indication in the record that the procedures under sections 3755, 3757 and 3759 were used in this case. Therefore, the workers' compensation liability of Rocket Science to special employees like Colamaria is not extinguished under section 3602, subdivision (d) and section 3700 and *Employers Mutual,* and is covered and not excluded under the Fireman's Fund policy's promise to pay for insured liability, and under *Waller.*

### B. *The legislative purpose and history*

Petitioners also argue that interpreting section 3602, subdivision (d), so that joint and several liability to special employees for workers' compensation is extinguished, is consistent with the Legislature's purpose of enacting the statute to avoid duplicate coverage and premiums. However, the legislative history and statutory language indicate that the Legislature intended to provide a means by which an employer could be provided with employees and mandatory workers' compensation insurance by another employer, and avoid tort, and other civil and criminal liabilities. The legislative history of section 3602, subdivision (d) indicates that the Legislature intended to save general and special employers duplicate workers' compensation coverage and premiums. Since the Legislature authorized a means by which employers could contract and satisfy workers' compensation insurance requirements

---

[4] Section 3755 states: "If the employer is insured against liability for compensation, and if after the suffering of any injury the insurer causes to be served upon any compensation claimant a notice that it has assumed and agreed to pay any compensation to the claimant for which the employer is liable, such employer shall be relieved from liability for compensation to such claimant upon the filing of a copy of such notice with the appeals board. The insurer shall, without further notice, be substituted in place of the employer in any proceeding theretofore or thereafter instituted by such claimant to recover such compensation, and the employer shall be dismissed therefrom."

[5] Section 3757 states: "If it thereafter appears to the satisfaction of the appeals board that the insurer has assumed the liability for compensation, the employer shall thereupon be relieved from liability for compensation to the claimant. The insurer shall, after notice, be substituted in place of the employer in any proceeding instituted by the claimant to recover compensation, and the employer shall be dismissed therefrom."

[6] Section 3759 states: "The appeals board may enter its order relieving the employer from liability where it appears from the pleadings, stipulations, or proof that an insurer joined as party to the proceeding is liable for the full compensation for which the employer in such proceeding is liable."

[7] Insurance Code section 11662 provides: "Whenever any employer is insured against liability for compensation with any insurer, such insurer is subrogated to the rights of the employer to recover losses arising out of any of the following acts by the insurer: [¶] (a) Assuming the liability of the employer for compensation in the manner provided by the law relating thereto. [¶] (b) Payment of any compensation for which the employer is liable. [¶] Such insurer may enforce any such subrogated rights in its own name."

with a single policy, there was no need to change the long-standing rule of their joint and several liability to affect coverage of another policy.

 However, section 3602, subdivision (d) also states that "an employer may secure the payment of compensation . . ." for employees provided by another employer by compliance with the statute. Therefore, the Legislature intended section 3602, subdivision (d) to be permissive and not preclude an employer from having its own workers' compensation insurance that extends coverage to employees provided by another employer.

### IV. *Coverage and intent is determined under the Fireman's Fund policy*

Petitioners do not allege that section 3602, subdivision (d) prevents an employer from having its own workers' compensation insurance, which is intended to extend coverage to employees provided by another employer. Petitioners contend that they intended the Reliance policy and not the Fireman's Fund policy to provide workers' compensation coverage to special employees like Colamaria. Petitioners base their contention on the agreement and performance under section 3602, subdivision (d), acceptance of liability by Reliance, the fact that the premium was determined by payroll, and Renaud's testimony. Petitioners argue that the intent of the parties and liability should not be changed by CIGA's subsequent involvement.

### A. *Coverage under the Fireman's Fund policy is clear and unlimited*

 However, the WCJ found that the coverage language of the Fireman's Fund policy is clear, explicit, broad and unqualified by an exclusionary endorsement, and because the policy is unambiguous there is no need to go outside its provisions to interpret coverage and intent. As CIGA contends, it is well settled that a standard workers' compensation policy without any limiting endorsements covers all employees of the employer. (*Fyne v. Industrial Acc. Com.* (1956) 138 Cal.App.2d 467, 469–474 [292 P.2d 78] (*Fyne*) [standard workers' compensation policy, without endorsement approved by Insurance Commissioner under Ins. Code, §§ 11657–11660[8] and Cal. Code Regs., tit. 10, §§ 2252–2268, covers all employees and is not limited

---

[8] Insurance Code section 11657 states in part: "Subject to the provisions of Sections 11659 and 11660, limited workers' compensation policies may be issued insuring either the whole or any part of the liability of any employer for compensation, provided that the policy is previously approved, as to substance and form, by the commissioner."

Insurance Code section 11658 states in part: "(a) A workers' compensation insurance policy or endorsement shall not be issued by an insurer to any person in this state unless the insurer files a copy of the form or endorsement with the rating organization pursuant to subdivision (e) of Section 11750.3 . . . . [¶] . . . [¶] (d) This section shall not apply to limited policies submitted for approval to the commissioner pursuant to Section 11657."

to location or operations shown in declarations].) Petitioners do not allege that the language regarding coverage under the Fireman's Fund policy is unclear or ambiguous. The record also does not indicate that statutory endorsements limiting coverage of the standard workers' compensation policy are inapplicable or inadequate. Therefore, the WCJ appropriately found that special employees like Colamaria are covered based on the Fireman's Fund policy. (Civ. Code, §§ 1638, 1639; *Palmer, supra*, 21 Cal.4th at p. 1115; *La Jolla Beach & Tennis Club, supra*, 9 Cal.4th at p. 37; *Kavruck, supra*, 108 Cal.App.4th at p. 782; *Fyne, supra*, 138 Cal.App.2d at pp. 471–472.)

### B. *The record does not support the intent petitioners suggest*

Even if we look beyond the Fireman's Fund policy, the record does not support the conclusion that coverage was intended, as urged by petitioners. The fact that Payday and Rocket Science agreed and obtained the Reliance policy under section 3602, subdivision (d) is insufficient because the statute allows Rocket Science to have applicable coverage under the Fireman's Fund policy. The WCJ also explained that normally Reliance would be liable under Insurance Code section 11663 because Colamaria was on Payday's payroll at the time of injury (see fn. 4, *ante*), but Reliance became insolvent and CIGA's liability is determined by Insurance Code section 1063.1, subdivision (c)(9). Thus, the record indicates that Reliance accepted liability based on Insurance Code section 11663, and not section 3602, subdivision (d). In addition, receipt of premium does not necessarily determine coverage in workers' compensation, as noted by CIGA. (See *American Motorists Ins. Co. v. Industrial Acci. Com.* (1937) 8 Cal.2d 585, 587–588 [67 P.2d 103] [general and special employers jointly and severally liable to special employee for workers' compensation despite contract and premium paid to general and not special insurer]; *Fyne, supra*, 138 Cal.App.2d at pp. 469–474.)

Renaud's testimony at trial is also not substantial evidence of coverage intended under the Fireman's Fund policy. Renaud testified that he did not know whether Rocket Science was covered by other workers' compensation insurance during the production of *Temptation Island*, and that some production companies insured their own employees under Payday's workers' compensation insurance. In addition, Laviano testified in deposition that he was

---

Insurance Code section 11659 states in part: "Such approved form of policy, limited pursuant to Section 11657, shall not be otherwise limited except by indorsement thereon in accordance with a form prescribed by the commissioner or in accordance with rules adopted by the commissioner. Such indorsement form shall not be subject to Section 11658."

Insurance Code section 11660 states: "Failure to observe the requirements of Sections 11657 and 11659 shall render a policy issued under Section 11657, and not complying therewith, unlimited."

employed by Rocket Science and paid by Payday, but did not testify concerning the Fireman's Fund policy. Cowan and Michenaud also testified in deposition that Rocket Science employees were paid by Payday, but they lacked knowledge about the workers' compensation insurance, which was handled by the accountants and legal advisers for Rocket Science. There was no testimony on behalf of Fireman's Fund from anyone knowledgeable about coverage and intent under the policy.

## DISPOSITION

The decision of the WCAB is affirmed and the matter is remanded for further proceedings consistent with this opinion.

Turner, P. J., and Mosk, J., concurred.

On November 9, 2010, the opinion was modified to read as printed above. Petitioners' petition for review by the Supreme Court was denied January 12, 2011, S188390.