Filed 1/18/24  Golden Noodles v. Souk CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GOLDEN NOODLES, INC.,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>SOUK, INC. and<br>ANDREW FAOUR,<br><br>      Defendants and Respondents. | B322781 and B327031<br><br>(Los Angeles County<br> Super. Ct. No. 19STCV22500) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephanie M. Bowick, Judge.  Affirmed.

Law Offices of Calvin J. Park and Calvin J. Park for Plaintiff and Appellant.

Leech Tishman Fuscaldo & Lampl and Fadi K. Rasheed for Defendants and Respondents.

# INTRODUCTION

Golden Noodles, Inc. (Golden Noodles) appeals from a judgment after a trial by written declaration. The court found Golden Noodles failed to meet its burden of proof on a sole breach of contract claim against respondents Souk, Inc. and Souk, Inc.'s chief executive officer, Andrew Faour (together, Souk). Golden Noodles bought a restaurant business from Souk, Inc. After the sale, a dispute arose between the parties concerning a claim by the California Employment Development Department (EDD) that the business owed back payroll taxes. The parties settled the dispute with an agreement that Souk would pay Golden Noodles $18,000 and the back payroll taxes "necessary to obtain [the] appropriate release" from the EDD.

At trial, Golden Noodles did not dispute that: (1) Souk paid the $18,000 as promised; (2) Souk paid the back payroll taxes that the EDD claimed; and (3) the EDD ultimately issued the release. Golden Noodles' sole theory of breach was that it, rather than Souk, had to obtain the release from the EDD, and that the delay it encountered in doing so interfered with Golden Noodles' efforts to sell the restaurant.

The trial court rejected this theory of breach, and we agree. Golden Noodles' breach of contract claim fails because the agreement did not require Souk to do what Golden Noodles claimed it failed to do. The agreement only required that Souk *pay* the back taxes that the EDD claimed. The agreement did not also require that Souk physically obtain the release from the EDD. Nor did the agreement require obtaining the release within any particular time. Thus, under the unambiguous terms of the agreement, which we interpret de novo, Souk fully satisfied its contractual obligations by paying the settlement amount to Golden Noodles and the back taxes to the EDD.

2

Golden Noodles' claim fails for an additional reason. The trial court found that Golden Noodles did not prove damages from its alleged inability to sell the business. On appeal, Golden Noodles forfeited its argument challenging the trial court's damages finding by waiting until its reply brief to raise it. Golden Noodles cannot prevail on its breach of contract cause of action because damages are a necessary element of its claim.

We also reject Golden Noodles' argument that the trial court awarded an unreasonable amount of attorneys' fees pursuant to the agreement's attorneys' fees provision. The trial court acted well within its discretion in awarding fees based upon a reasonable hourly rate and records of attorney hours expended. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Sale and Escrow*

In 2017, Golden Noodles agreed to purchase a restaurant from Souk, Inc. The parties engaged an escrow company, Eon Escrow, Inc. (Eon), to handle the transaction.

Golden Noodles paid the purchase price into escrow. The escrow instructions required Eon to wait to disburse the purchase money until Souk, Inc. deposited in escrow a release of Golden Noodles from the EDD pursuant to California Unemployment Insurance Code section 1732.[1]

---

[1]     The statute requires that, "[u]pon request of either of the parties to an acquisition . . . the [EDD] shall . . . issue a certificate, or a statement showing the amount of any contributions, interest and penalties claimed to be due." A statement from the EDD that no contributions, interest or penalties are due "shall release the acquiring person . . . from any further liability on account of any such contributions, interest and penalties." (Unemp. Ins. Code, § 1732, subds. (a) & (b).) Once a seller has paid its outstanding liability to the EDD,

3

Eon prepared and sent a request to the EDD to issue the release to Golden Noodles. The EDD responded to the request with a statement that it could not issue the release until Souk, Inc. paid outstanding payroll taxes. Souk, Inc. disputed the EDD's claim and hired an attorney to negotiate with the EDD on its behalf.

B. *The Settlement Agreement*

While Souk, Inc.'s negotiations with the EDD were ongoing, Golden Noodles and Souk entered into a settlement agreement (agreement) addressing the EDD claim as well as an unrelated dispute.

Section 1 of the agreement, entitled "Payment," required Souk to pay Golden Noodles $18,000 (the settlement amount). The section also addressed the source and timing of such payment: "[t]he [s]ettlement [a]mount shall be paid by funds that are held in [e]scrow promptly after [Souk, Inc.] obtains [the] appropriate release[] from the [EDD]. . . . Once such release[] [is] issued or obtained . . . [Eon] shall forthwith disburse the [s]ettlement [a]mount to [Golden Noodles]. . . . In the event that there are no remaining funds, or the remaining funds in [e]scrow are insufficient to satisfy the entire [s]ettlement [a]mount, [Souk] shall pay [Golden Noodles] through cash, checks or other means so that [Golden Noodles] receives the entire [s]ettlement [a]mount promptly following the EDD . . . release[]. At the latest, whether or not [the] release[] from the EDD . . . ha[s] been received, [Souk] shall pay [Golden Noodles] the [s]ettlement [a]mount by no later than December 31, 2018."

the EDD issues a preprinted form to the buyer entitled "Certificate of Release of Buyer" (release). The release states, "[u]nder [s]ection 1732 . . . the [EDD] . . . release[s] the buyer . . . of liability for any unpaid contributions, withholding taxes, penalties, and interest due."

Section 2 of the agreement addressed the outstanding payroll taxes. Souk agreed "to pay such payroll taxes . . . necessary to obtain [the] appropriate release[] of the [b]usiness from the EDD." The agreement did not establish a deadline for this payment.

The agreement also included an indemnification provision. Souk agreed "to defend, indemnify and hold harmless [Golden Noodles] . . . from and against any and all claims, demands, actions, suits, proceedings, liabilities, damages, losses, interests, penalties, fines, liens, charges, impositions, expenses, and costs (including attorney[s'] fees) arising out of the alleged nonpayment or underpayment of payroll taxes . . . by [Souk] concerning the [b]usiness."

The agreement contained an attorneys' fees provision that allowed the prevailing party in any lawsuit arising from the agreement to recover reasonable attorneys' fees from the "non-prevailing party."

C. *Settlement Payment and Issuance of the EDD Release*

Following execution of the agreement, Souk paid Golden Noodles $18,000.[2] After that payment, Souk, Inc. continued negotiating with the EDD regarding its claim for back payroll taxes.

During the negotiations, the EDD issued a notice of levy to Eon. The notice instructed Eon to pay Souk, Inc.'s outstanding payroll taxes, interest, and penalties. Days later, Eon paid the remainder of the escrowed funds to the EDD on Souk, Inc.'s behalf.

---

[2] The precise date on which Souk paid the settlement amount is unclear from the record. However, there is no dispute that the settlement amount was timely paid pursuant to section 1 of the agreement.

Souk, Inc.'s attorney continued to negotiate with the EDD regarding an additional amount the EDD claimed Souk, Inc. owed.  In July 2020, at Golden Noodles request, the EDD provided a notice stating Souk, Inc. had paid its EDD liability and issued a release.

D. *The Complaint*

Before the EDD issued the release, Golden Noodles sued Souk.  On June 26, 2019, Golden Noodles filed a complaint alleging a single breach of contract cause of action against Souk.[3]

Golden Noodles alleged that Souk agreed to "(1) pay $18,000.00 to [Golden Noodles], and (2) obtain [the] appropriate release[] from [the] EDD . . . reasonably by around December 31, 2018."  Golden Noodles further alleged it "demanded [Souk] to obtain the release[] by no later than June 16, 2019, but they again failed to obtain the release[]."  Golden Noodles alleged generally that "[a]s a proximate cause of [Souk's] breach, [Golden Noodles] has suffered damages."

E. *The Trial*

The parties stipulated to a non-jury trial by declaration. Golden Noodles' sole basis for claiming breach of the agreement was that "[Souk] failed to contact [the] EDD to obtain the [release]."  Golden Noodles provided declarations from EDD personnel who stated Souk did not contact them to ask the EDD to issue the release.  Golden Noodles also submitted

---

[3]     Golden Noodles also named other defendants in the complaint, but it settled the claims against the other defendants before trial.  The breach of contract claim against Souk was the only remaining claim at trial.

6

evidence showing that the EDD issued the release once Golden Noodles requested it.

Souk disputed that the agreement actually required it to obtain the release. It argued that the agreement only obligated it to pay the taxes necessary to obtain the release. Souk submitted evidence demonstrating it had paid the settlement amount pursuant to section 1 of the agreement and had paid all payroll taxes to the EDD necessary for the EDD to issue the release.

The trial court found in favor of Souk. The court concluded that Golden Noodles failed to prove a breach of the contract. The court found "[t]he evidence shows that [Souk] negotiated with the EDD and paid all money necessary to resolve any issues and legally obligate [the] EDD to issue a [release to Golden Noodles]."

The court next assumed, *arguendo*, that even if Golden Noodles had proved breach, the claim failed because Golden Noodles did not prove damages. The court stated Golden Noodles "fail[ed] to provide sufficient, competent, and admissible evidence that there was a potential buyer and serious offer to purchase the [b]usiness, but the sale did not occur due to the lack of the issuance of the [release] and/or due to an understanding that there was an EDD lien on the [p]roperty."

As the prevailing party, the court found Souk was entitled to reasonable attorneys' fees under the agreement. The court awarded Souk $102,737.50 in reasonable attorneys' fees.

Golden Noodles timely appealed.

7

## DISCUSSION

### A. *Breach of Contract Claim*

#### 1. *Standard of Review*

Generally, "contract interpretation is an issue of law, which we review de novo." (*DFS Group L.P. v. County of San Mateo* (2019) 31 Cal.App.5th 1059, 1079.) Whether contract language is ambiguous and therefore permits the consideration of extrinsic evidence of intent is similarly a question of law, subject to independent review on appeal. (*Zipusch v. LA Workout, Inc.* (2007) 155 Cal.App.4th 1281, 1288.)

"In reviewing a trial court's interpretation of a written instrument where no conflicting extrinsic evidence is received, an appellate court is not bound by the trial court's ruling but must give the writing its own independent interpretation." (*Davies Machinery Co. v. Pine Mountain Club, Inc.* (1974) 39 Cal.App.3d 18, 23.)

Here, it is unclear from the record whether the trial court considered any extrinsic evidence in interpreting the agreement. On appeal, however, Golden Noodles relies on the agreement's plain language to support its interpretation. Neither party cites any extrinsic evidence. We, therefore, independently interpret the agreement on appeal.

#### 2. *No Breach*

The elements of a breach of contract claim are: (1) the existence of a contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) resulting damage to the plaintiff. (*Abdelhamid v. Fire Ins. Exchange* (2010) 182 Cal.App.4th 990, 999 (*Abdelhamid*).)

Golden Noodles contends the trial court erred in finding that it failed to prove the damages element. Golden Noodles asserts that the "clear and

8

unambiguous" language of the agreement obligated Souk to "physical[ly] obtain the [release]." Thus, it argues that Souk's failure to "physical[ly] obtain the [release]" constituted a breach of the agreement.

Golden Noodles' argument is inconsistent with well-settled principles of contract interpretation. "Contracts are interpreted so as to give effect to the mutual intention of the parties at the time of contracting, to the extent ascertainable and lawful. [Citations.] The mutual intent of the parties is ascertained from the contract language, which controls if clear and explicit." (*Fireman's Fund Ins. Co. v. Workers' Comp. Appeals Bd.* (2010) 189 Cal.App.4th 101, 110–111; *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 956 [the objective words of the contract control rather than the subjective intent of one of the parties].) "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.)

Golden Noodles cites one excerpt from the agreement to support its claim that Souk was required to "physical[ly] obtain the release." Golden Noodles relies upon one sentence in section 1 of the agreement stating that "[t]he [s]ettlement [a]mount shall be paid by funds that are held in [e]scrow promptly *after [Souk, Inc.] obtains [the] appropriate release[]* from the *[EDD]."*

Golden Noodles' argument ignores the context of the statement. As mentioned, section 1 of the agreement addressed the mechanics and timing of the settlement payment, not Souk's obligations concerning a release from the EDD. The section addressed: (1) the payment amount ($18,000); (2) the means of funding payment (the escrowed funds or "cash, checks or other means" if escrowed funds were insufficient or unavailable); and (3) the

9

payment deadline (the earlier of "promptly after [Souk, Inc.] obtains appropriate release[] from the [EDD]" or, by December 31, 2018 "whether or not [the] release[] from the EDD . . . [has] been received"). Thus, this section required prompt payment of the settlement amount *if* Souk, Inc. obtained the release, but it did not require Souk, Inc. to do so. Indeed, it did not require any party to obtain the release. It simply mandated payment of the settlement amount by December 31, 2018 "*whether or not [the] release[] from the EDD . . . ha[s] been received.*" (Italics added.)

Section 2 of the agreement, which specifies Souk's obligation concerning the release, is clear. That section only required that Souk *pay the taxes* "necessary to obtain [the] appropriate release[]." It did not require Souk to obtain the release from the EDD.

The scope of the indemnification provision in section 2 also supports this conclusion. The provision specifically covered claims arising from the "alleged nonpayment or underpayment of payroll taxes" concerning the business. The provision did not address Souk's failure to physically obtain a release. If the parties had intended to impose such an obligation, presumably, they would have crafted an indemnification provision that included Souk's failure to meet it.

The language of the agreement does not establish any obligation that Souk failed to meet. Souk did what it promised to do: paid the settlement amount and the outstanding payroll taxes. The trial court correctly concluded that Souk could not be liable for breach of an obligation that the agreement did not include.

B. *No Prejudicial Error*

Even if Golden Noodles' interpretation of the agreement was correct, the appeal still fails because Golden Noodles cannot show prejudice.

The trial court found that Golden Noodles had failed to prove damages. (*Abdelhamid, supra,* 182 Cal.App.4th at p. 999 [the elements of a breach of contract claim include the defendant's breach and resulting damage to the plaintiff].)

Golden Noodles did not address this finding until its reply brief. Golden Noodles has forfeited its challenge to the damages finding. (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1050 [where appellant fails to raise an argument "until its appellate reply brief," it "has forfeited the argument"].)

Thus, even if Golden Noodles was correct that Souk breached a contractual obligation to obtain a release from the EDD, Golden Noodles could not show that it was prejudiced by the trial court's finding to the contrary. Golden Noodles' failure to prove damages was a separate basis for the trial court's ruling and, therefore, constitutes an independent ground supporting the judgment. (See Code Civ. Proc., § 475; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [an error is not prejudicial if independent grounds unaffected by the error support the judgment].)

C. *Attorneys' Fees*

Golden Noodles argues the trial court abused its discretion by awarding Souk its requested attorneys' fees. First, Golden Noodles contends the $102,737.50 fee award should be reversed if the judgment in Souk's favor is reversed. Because we affirm the judgment, we reject this contention.

11

Second, Golden Noodles asserts the attorney fee award was "unreasonable and excessive." We disagree.

Under Civil Code section 1717, subdivision (a), "[r]easonable attorney[s'] fees shall be fixed by the court" in an action "where the contract specifically provides that attorney[s'] fees and costs . . . shall be awarded." Because an award of attorneys' fees under section 1717 is governed by equitable principles, "the trial court has broad authority to determine the amount of a reasonable fee." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) The trial judge "'is the best judge of the value of professional services rendered in [the judge's] court, and while [her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' [Citations.]" (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) Thus, we review the court's determination of reasonable attorneys' fees for abuse of discretion. (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691.)

Here, Souk supported its request for attorneys' fees with a declaration from its lead attorney and billing records indicating its attorneys spent 390.7 hours litigating the matter. The lead attorney, with 40 years of litigation experience, detailed his work over the three years his firm handled the case. He also detailed the work of a second attorney who worked on the litigation. The second attorney has over 10 years of litigation experience. The lawyers' work included propounding discovery, responding to discovery, drafting a mandatory settlement conference brief, preparing for trial, including preparation of witness and exhibit lists, declarations, motions in limine, and a trial brief, and the drafting of the motion for attorneys' fees.

For this work, the lead attorney charged the following hourly rates: $350 for his work; $100 for the second attorney's work, discounted from her

usual hourly rate due to her familial ties to respondent Andrew Faour.  The trial judge found these rates reasonable, noting the court "can and does rely on its own knowledge."  (*569 E. Country Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 437.)  The court also found the total amount of requested attorneys' fees reasonable in light of the time expended.  Golden Noodles makes a general claim that the amount of time Souk's counsel spent on the case was unreasonable.  Nonspecific arguments do not warrant reversal under the deferential abuse of discretion standard of review.  (*Olive v. General Nutrition Centers, Inc.* (2018) 30 Cal.App.5th 804, 827 ["A court abuses its discretion if its ruling is so irrational or arbitrary that no reasonable person could agree with it"].)  Golden Noodles has failed to show that the trial court's award of $102,737.50 in attorneys' fees constituted an abuse of discretion.

## DISPOSITION

The judgment is affirmed.  Souk, Inc. and Andrew Faour are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, J.

We concur:

CURREY, P. J.

COLLINS, J.

13