[No. B146236. Second Dist., Div. One. Feb. 27, 2002.]

JOHN D. YOUNG, Plaintiff and Appellant, v.
RICHARD GANNON, as Director, etc., et al., Defendants and
Respondents;
DEPARTMENT OF INDUSTRIAL RELATIONS, Real Party in Interest
and Respondent.

## COUNSEL

Spiro Moss Barness & Harrison and Dennis F. Moss for Plaintiff and Appellant.

John M. Rea, Vanessa L. Holton, Frank Nelson Adkins and Sarah L. Cohen for Defendant and Respondent Richard Gannon and for Real Party in Interest and Respondent.

No appearance for Defendant and Respondent State Personnel Board.

## OPINION

**SPENCER, P. J.—**

### INTRODUCTION

John D. Young appeals from a judgment denying his petition for writ of mandate. We affirm the judgment.

### STATEMENT OF FACTS

*Appellant's Termination as a Workers' Compensation Judge*

Appellant was appointed to be a Workers' Compensation Judge (WCJ) for the Workers' Compensation Appeals Board (WCAB). In June 1994, he attended new judges' training, which included presentations on the timeliness of decisions. Thereafter, in at least two quarterly trainings, he received

instruction on the 90-day rule. Under this rule, a WCJ may not receive his or her salary while any cause remains pending and undetermined for 90 days after submission. At the end of a pay period, a WCJ must sign and submit an affidavit under penalty of perjury, that to the best of his or her belief, no cause remains pending and undetermined that was submitted 90 days prior to the first day of the next pay period.[1]

In the fall of 1997, appellant's supervisor, Presiding WCJ Barbara Burke (Burke), met with him after reviewing a statistical report showing that he had been delinquent in completing his decisions. They discussed the term "filed in the record" within the context of the 90-day rule.[2] Appellant expressed his belief that giving his secretary a handwritten decision met the requirement that the decision be "filed in the record." Burke explained that he was incorrect; a decision was not "filed in the record" until it was typed, signed and officially filed in the record. Appellant responded that there was a difference of opinion. Burke reminded him of the correct meaning of the term and told him he would be held accountable for acting in accord with his belief.

Appellant's practice was to maintain a log in which he entered the date on which he wrote a handwritten decision and the date he signed a typed decision. To him, a decision was "filed in the record" when he wrote the handwritten decision, attached it to the case file and gave the decision and file to his secretary.

During the time period at issue herein, appellant executed eight affidavits stating under penalty of perjury that he had no causes pending and undetermined older than 90 days when, in fact, he had causes older than 90 days, in which no decision had been "filed in the record."[3]

---

[1]Labor Code section 123.5, subdivision (a), which codifies the 90-day rule, provides: "A workers' compensation judge may not receive his or her salary as a workers' compensation judge while any cause before the workers' compensation judge remains pending and undetermined for 90 days after it has been submitted for decision." California Code of Regulations, title 8, section 9714, provides the procedures for compliance with the 90-day rule. Specifically, it provides in subdivision (a) that "[i]n order to receive his or her salary for each pay period, at some time before 5:00 p.m. on the last working day of each State payroll period, the Workers' Compensation Administrative Law Judge shall submit to the Division of Workers' Compensation an affidavit based upon information and belief in the form prescribed by Section 9714.5, and executed under penalty of perjury, declaring that no cause submitted before him or her remains pending and undetermined for a period of ninety (90) days or more."

[2]A decision is " '[p]ending and [u]ndetermined' " within the context of the 90-day rule if it "has not been filed in the record." (Cal. Code Regs., tit. 8, § 9712, subd. (c).)

[3]The State Personnel Board and the trial court found that even under appellant's definition of "filed in the record," five of the affidavits were executed when appellant had causes older than 90 days pending and undetermined. The record shows that at the time appellant executed

Appellant also engaged in inappropriate conduct toward two female attorneys who appeared before him. State Compensation Insurance Fund Attorney Nona Rentzer (Rentzer) appeared in WCAB cases before appellant from July through September 1996. Appellant was interested in pursuing a relationship with her. In July 1996, he asked Rentzer to come into his chambers during a conference. For 30 to 40 minutes, while the other attorneys involved in the conference waited, he engaged her in a personal conversation. As she was leaving his chambers, he gave her a card with his telephone number on it and invited her to lunch and the shooting range. Thereafter, he telephoned her at least half a dozen times, sent her greeting cards and sought her out when she had appearances before the WCAB. Appellant's conduct made Rentzer uncomfortable. She was afraid, however, that if she did anything to anger him he would harm her.

Appellant had been trained in disclosure requirements and recusal obligations as well as judicial ethics. Despite his training, he did not recuse himself from cases in which Rentzer was appearing. Neither did he disclose to the parties that he had a personal interest in Rentzer. He attempted to justify his behavior by stating that Rentzer's appearances before him were at "uncontested" settlement conferences, even though adversarial parties were involved in those settlement conferences. Appellant's conduct was persistent and conveyed an appearance of impropriety.

From June 1996 through September 1997, Marcia Donald (Donald), an attorney for CIGNA, appeared in WCAB cases before appellant one to five times a month. Appellant initiated a personal relationship with her, although it never progressed beyond friendship. They frequently went to lunch together, and they went out together on a day neither had to work. Appellant sent Donald at least eight greeting cards and notes, in which he thanked her for her company and invited her to various activities and social events. Appellant also telephoned Donald at her office and home, sometimes as often as three or four times a week.

Early in the summer of 1997, Donald told appellant that she did not want to pursue a relationship with him for fear of losing her job and because of the appearance of impropriety. Appellant persisted in inviting her to lunch. She agreed to go only if they were part of a group. In September 1997, Donald agreed to allow appellant to join her and another attorney for lunch. When the other attorney failed to appear, Donald had lunch with appellant

---

the five affidavits, he had causes older than 90 days pending and undetermined. The affidavits were postdated, however. He gave the handwritten decisions to his secretary *after* executing the affidavits but *before* the dates on the affidavits. For this reason, appellant disagrees with the findings of the State Personnel Board and the trial court.

alone. She felt pressured to do so because appellant was a judge before whom she appeared, and she did not want to anger or upset him. After the lunch, appellant's telephone calls to Donald increased in frequency, and he left messages for her at her office and home. Finally, in October 1997, Donald told appellant he was no longer to telephone her, send her cards or go to lunch with her. During the time that appellant had a personal relationship with Donald, he did not recuse himself from any cases in which she appeared or disclose their relationship to the other parties.

Appellant was dismissed from his position effective September 29, 1998. This was accomplished by a notice of adverse action from the Department of Industrial Relations, Division of Workers' Compensation. (Gov. Code, § 19574.) According to the notice of adverse action, appellant was being dismissed for incompetence, inefficiency, inexcusable neglect of duty, dishonesty, discourteous treatment of others, misuse of state property, other failure of good behavior and unlawful discrimination, including harassment. (*Id.*, § 19572, subds. (b), (c), (d), (f), (m), (p), (t), (w).) This was based upon his falsification of affidavits, deficient productivity, and inappropriate behavior with Rentzer and Donald.

On December 15, 1998, appellant filed a written motion to dismiss the notice of adverse action on the ground the administrative director of the Division of Workers' Compensation of the Department of Industrial Relations (administrative director) had failed to adopt regulations required by Labor Code section 123.6.[4] Under such regulations, he would be entitled to have a body such as the Commission on Judicial Performance conduct an investigation and provide him with a hearing prior to his dismissal.

Appellant's motion to dismiss was heard in late 1998 and early 1999 by an administrative law judge (ALJ). On April 26, 1999, the ALJ issued a proposed decision denying the motion to dismiss.

Appellant appealed the ALJ's proposed decision to the State Personnel Board (Board). The Board rejected the ALJ's proposed decision, resolving to decide the case itself.

---

[4]Labor Code section 123.6, subdivision (a), provides: "All workers' compensation administrative law judges employed by the administrative director shall subscribe to the Code of Judicial Ethics adopted by the Supreme Court pursuant to subdivision (m) of Section 18 of Article VI of the California Constitution for the conduct of judges and shall not otherwise, directly or indirectly, engage in conduct contrary to that code. [¶] The administrative director shall adopt regulations to enforce this section. To the extent possible, the rules shall be consistent with the procedures established by the Commission on Judicial Performance for regulating the activities of state judges, and, to the extent possible, with the gift, honoraria, and travel restrictions on legislators contained in the Political Reform Act of 1974 (Title 9 (commencing with Section 81000) of the Government Code)."

The Board issued its decision on October 5-6, 1999. A majority of the Board concluded "that appellant was dishonest on several occasions when he signed affidavits declaring that he had no cases pending for over 90 days. A majority of the Board also [found] that, while appellant's conduct toward two female attorneys did not constitute sexual harassment under Government Code section 19572(w), it was extremely inappropriate and constituted cause for discipline. Therefore, a majority of the Board conclude[d] that dismissal [was] the just and proper penalty for the proven misconduct."

*Ethical Standards for WCJ's*

In 1993, the Legislature amended Labor Code section 123.6 to require the administrative director to adopt regulations to enforce that section. The impetus for this amendment was allegations of corruption and misconduct among WCJ's in Southern California which were under investigation by the Department of Industrial Relations. Another concern was "limited and sporadic" training for WCJ's. (Assem. Fin. & Ins. Com., Analysis of Assem. Bill No. 1252 (1993-1994 Reg. Sess.) Aug. 24, 1993.)

Pursuant to the mandate of Labor Code section 123.6, the then administrative director adopted regulations governing the ethical standards of WCJ's, title 8, chapter 4.5, subchapter 1, article 1.6 of the California Code of Regulations, section 9720.1 et seq., effective December 1, 1995. They require WCJ's to abide by the Code of Judicial Conduct and other regulations. (*Id.*, §§ 9721.1-9721.32.) They also create a Workers' Compensation Ethics Advisory Committee (Committee) to receive complaints against WCJ's, forward the complaints to the administrative director with recommendations as to whether or not they should be investigated, monitor the outcome of the complaints, and report on the integrity of the workers' compensation adjudicatory process. (*Id.*, § 9722.) The Committee is to consist of nine members appointed by the administrative director including: three members of the public representing organized labor, insurers and self-insured employers; two attorneys who formerly practiced before the WCAB and represented employers and applicants; a presiding WCJ, a current or retired WCJ; two members of the public outside the workers' compensation system. (*Ibid.*)

Under the regulations, complaints may be filed with the Committee. (Cal. Code Regs., tit. 8, § 9722.1, subd. (a).) The Committee reviews the complaint and "may make brief, informal inquiries to obtain information needed to clarify the complaint." (*Id.*, subd. (b).) The Committee then forwards the complaint to the administrative director with a recommendation to proceed or not to proceed with the complaint. (*Id.*, subds. (c), (d).)

Once the administrative director receives the complaint, he or she shall conduct an investigation to determine whether the WCJ has engaged in misconduct. (Cal. Code Regs., tit. 8, § 9722.2, subd. (a).) During the course of the investigation, the administrative director shall inform the WCJ of the nature of the charges, and the WCJ shall be given the opportunity to submit a response. (*Id.*, § 9722.1, subd. (f).) If the administrative director determines that there has been misconduct, he or she shall take appropriate disciplinary action against the WCJ. (*Id.*, § 9722.2, subd. (c).)

WCJ's are state employees covered by the civil service system. (Cal. Const., art. VII, § 1; Lab. Code, § 123.5, subd. (a).) They are employed by the administrative director, who is responsible for personnel matters. (Lab. Code, §§ 111, subd. (a), 123.5, subd. (a).) A WCJ disciplined under the regulations retains the procedural rights provided under the State Civil Service Act. (Cal. Code Regs., tit. 8, § 9723, subd. (a).)

By contrast, state court judges are judicial officers, appointed by the governor or elected. (Cal. Const., art. VI, § 16.) They are subject to discipline by the Commission on Judicial Performance (Commission). (*Id.*, § 18.) The Commission consists of 11 members: 3 judges, appointed by the Supreme Court; 2 members of the State Bar, appointed by the Governor; and 6 members of the public, 2 appointed by the Governor, 2 by the Senate Committee of Rules, and 2 by the Speaker of the Assembly. (*Id.*, § 8.)

Under the Commission's rules, when a written complaint is received by the Commission, the Commission may dismiss the proceeding, make an inquiry to determine whether a preliminary investigation is warranted, or make a preliminary investigation to determine whether to institute formal proceedings and hold a hearing. (Rules of Com. on Jud. Performance, rule 109(a).) If an inquiry or a preliminary investigation is commenced, the judge must be notified and be given the opportunity to respond. (*Id.*, rules 110(a), 111(a).) If the results of the inquiry or preliminary investigation warrant it, the Commission may terminate the inquiry or preliminary investigation. (*Id.*, rules 110(b), 111(b).) The Commission also may defer termination of the preliminary investigation in order to monitor the judge's conduct. (*Id.*, rule 112.) The judge has the right to be represented by counsel during all proceedings. (*Id.*, rule 106.)

Based upon the results of the preliminary investigation, the Commission may issue the judge a notice of intended private or public admonishment. (Rules of Com. on Jud. Performance, rules 113, 115.) The judge has the opportunity to accept the intended admonishment, to object, appear before the Commission and contest the intended action, or to demand formal proceedings. (*Id.*, rules 114, 116.)

Formal proceedings must be noticed. (Rules of Com. on Jud. Performance, rule 118.) The judge is given the opportunity to file an answer. (*Id.*, rule 119.) Discovery is permitted. (*Id.*, rule 122.) The Commission may hear the matter itself or request that the Supreme Court appoint special masters to hear the matter and report to the Commission. (*Id.*, rule 121.) At the hearing, the rules of evidence apply (*id.*, rule 125), witnesses may be subpoenaed and the judge may cross-examine witnesses (*id.*, rule 126(a)). Following the hearing, the Commission may vote to impose discipline—from private admonishment to removal of the judge. (*Id.*, rule 134.)

The judge may petition the Supreme Court to review the Commission's determination. (Cal. Const., art. VI, § 18, subd. (d).) The Supreme Court may grant review of the determination or it may let the determination stand. (*Ibid.*)

### PROCEDURAL BACKGROUND

Appellant filed a petition for writ of mandate against Richard Gannon (Gannon), the current administrative director, and the Board. Appellant brought his first cause of action for a writ of mandate (Code Civ. Proc., § 1085) against Gannon, "as a taxpayer of the State of California interested in compliance with the Labor Code by the Division of Workers' Compensation, and its Administrative Director . . . ." In this cause of action, he sought to compel Gannon to repeal the regulations adopted to enforce Labor Code section 123.6 and to adopt regulations consistent with the procedures established by the Commission on Judicial Performance for regulating the activities of judges.

Appellant brought his second cause of action for a writ of administrative mandate (Code Civ. Proc., § 1094.5) against the Board. He sought to have the Board set aside its decision upholding his termination, dismiss the notice of adverse action, and order the Department of Industrial Relations, Division of Workers' Compensation, to reinstate him and compensate him.

Gannon demurred, and his demurrer was sustained without leave to amend. Real party in interest Department of Industrial Relations then appeared in the action. Following a hearing, the trial court denied the petition for writ of administrative mandate.

### CONTENTIONS

### I

Appellant contends the trial court erred in sustaining Gannon's demurrer to his cause of action for a writ of mandate, in that he failed to carry out his obligation to comply with Labor Code section 123.6.

## II

Appellant also contends the trial court erred in denying his petition for writ of administrative mandate.

## DISCUSSION

### I

■ Appellant contends the trial court erred in sustaining Gannon's demurrer to his cause of action for a writ of mandate, in that he failed to carry out his obligation to comply with Labor Code section 123.6. We disagree.

■ A demurrer tests the sufficiency of the plaintiff's complaint, i.e., whether it states facts sufficient to constitute a cause of action upon which relief may be based. (Code Civ. Proc., § 430.10, subd. (e); *Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 841-842 [73 Cal.Rptr.2d 427].) In determining whether the complaint states facts sufficient to constitute a cause of action, the trial court may consider all material facts pleaded in the complaint and those arising by reasonable implication therefrom; it may not consider contentions, deductions or conclusions of fact or law. (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 638 [29 Cal.Rptr.2d 152, 871 P.2d 204]; *Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790 [90 Cal.Rptr.2d 598].) The trial court also may consider matters of which it may take judicial notice. (Code Civ. Proc., § 430.30, subd. (a); *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 459 [80 Cal.Rptr.2d 329].) A demurrer should not be sustained without leave to amend if the complaint, liberally construed, can state a cause of action under any theory or if there is a reasonable possibility the defect can be cured by amendment. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317]; *Jager v. County of Alameda* (1992) 8 Cal.App.4th 294, 297 [10 Cal.Rptr.2d 293].)

On appeal, we review the trial court's sustaining of a demurrer without leave to amend de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law and applying the abuse of discretion standard in reviewing the trial court's denial of leave to amend. (*Montclair Parkowners Assn. v. City of Montclair, supra,* 76 Cal.App.4th at p. 790; *Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497-1498 [57 Cal.Rptr.2d 406].) The plaintiff bears the burden of proving the trial court erred in sustaining the demurrer or abused its discretion in denying leave to amend. (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith,*

*Inc., supra,* 68 Cal.App.4th at p. 459; *Coutin v. Lucas* (1990) 220 Cal.App.3d 1016, 1020 [270 Cal.Rptr. 93].)

■ Mandamus is an appropriate means for compelling a public official to perform an official act that is required by law. (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442 [261 Cal.Rptr. 574, 777 P.2d 610].) It generally will lie only to compel the public official's performance of a duty which is purely ministerial in nature. (*Transdyn/Cresci JV v. City and County of San Francisco* (1999) 72 Cal.App.4th 746, 752 [85 Cal.Rptr.2d 512].) Where a public official is required by law to exercise his or her discretion, mandamus will lie to compel the official to exercise his or her discretion under a proper interpretation of the law. (*Common Cause, supra,* at p. 442; *Saathoff v. City of San Diego* (1995) 35 Cal.App.4th 697, 702 [41 Cal.Rptr.2d 352].) It will not lie to compel the public official to exercise his or her discretion in a particular manner, however. (*Saathoff, supra,* at p. 702.) Mandamus also is available "to 'correct those acts and decisions of administrative agencies which are in violation of law . . . .'" (*Transdyn/Cresci JV, supra,* at p. 752.)

■ Rules adopted by an administrative agency fall into one of two categories: quasi-legislative or interpretive. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 10 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) Quasi-legislative rules are those adopted pursuant to a delegation of legislative power. (*Ibid.*) Such rules "have the dignity of statutes." (*Ibid.*) Thus, the scope of judicial review of these rules is narrow. (*Ibid.*) Once the court is "satisfied that the rule in question lay within the lawmaking authority delegated by the Legislature, and that it is reasonably necessary to implement the purpose of the statute, judicial review is at an end." (*Id.* at pp. 10-11.)

"'"These issues do not present a matter for the independent judgment of an appellate tribunal; rather, both come to this court freighted with [a] strong presumption of regularity . . . ." [Citation.] Our inquiry necessarily is confined to the question whether the classification is "arbitrary, capricious or [without] reasonable or rational basis." [Citation.]'" (*Yamaha Corp. of America v. State Bd. of Equalization, supra,* 19 Cal.4th at p. 11, fn. omitted.) The court does not, however, "defer to an agency's view when deciding whether a regulation lies within the scope of the authority delegated by the Legislature. The court, not the agency, has 'final responsibility for the interpretation of the law' under which the regulation was issued. [Citations.]" (*Id.* at p. 11, fn. 4.)

■ The regulations at issue here fall within the category of quasi-legislative rules, having been adopted pursuant to the legislative mandate of

Labor Code section 123.6. (See *Yamaha Corp. of America v. State Bd. of Equalization, supra,* 19 Cal.4th at p. 10.) The question before us is whether the regulations adopted by the administrative director pursuant to Labor Code section 123.6 " ' "(1) [are] 'within the scope of the authority conferred' [citation] and (2) [are] 'reasonably necessary to effectuate the purpose of the statute' [citation]." ' " (19 Cal.4th at p. 11.) If they are not as a matter of law, mandate will lie to compel the administrative director to adopt regulations which do meet these requirements. (*Common Cause v. Board of Supervisors, supra,* 49 Cal.3d at p. 442; *Transdyn/Cresci JV v. City and County of San Francisco, supra,* 72 Cal.App.4th at p. 752; see, e.g., *Pulaski v. Occupational Safety & Health Stds. Bd.* (1999) 75 Cal.App.4th 1315 [90 Cal.Rptr.2d 54].)

As previously stated, Labor Code section 123.6, subdivision (a), requires that "workers' compensation administrative law judges employed by the administrative director shall subscribe to the Code of Judicial Ethics adopted by the Supreme Court pursuant to subdivision (m) of Section 18 of Article VI of the California Constitution for the conduct of judges and shall not otherwise, directly or indirectly, engage in conduct contrary to that code." It further provides that "[t]he administrative director shall adopt regulations to enforce this section. To the extent possible, the rules shall be consistent with the procedures established by the Commission on Judicial Performance for regulating the activities of state judges, and, to the extent possible, with the gift, honoraria, and travel restrictions on legislators contained in the Political Reform Act of 1974 (Title 9 (commencing with Section 81000) of the Government Code)."

Appellant's contention is that the regulations adopted by the then administrative director are not, "[t]o the extent possible, . . . consistent with the procedures established by the Commission on Judicial Performance for regulating the activities of state judges." (Lab. Code, § 123.6, subd. (a).) For example, the decision to discipline a WCJ is made by the administrative director alone, whereas the decision to discipline a state judge is made by the entire Commission. A state judge is afforded due process rights during the investigation, while a WCJ is not afforded such rights until after discipline has been imposed. Additionally, a state judge is paid his or her salary while defending against allegations of misconduct, while a WCJ's opportunity to defend comes after he or she has been terminated. Finally, the Commission rules specifically provide for such lesser enforcement mechanisms as monitoring, admonishment and censure, while the regulations do not.

The gravamen of appellant's argument is that Labor Code section 123.6, subdivision (a), must be interpreted to require the administrative director to adopt regulations to enforce the section which provide the same disciplinary

procedures as those provided to state judges. ■ In the construction of statutes, the primary goal of the court is to ascertain and give effect to the intent of the Legislature. (Code Civ. Proc., § 1859; *People v. Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713].) The court looks first to the language of the statute; if clear and unambiguous, the court will give effect to its plain meaning. (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 208-209 [271 Cal.Rptr. 191, 793 P.2d 524]; accord, *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].)

Where the court must construe the statute, it " 'turns first to the words themselves for the answer.' [Citation.]" (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) The words used should be given their usual, ordinary meanings and, if possible, each word and phrase should be given significance. (*Ibid.*; accord, *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) The words used "must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible." (*California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836]; accord, *Lungren, supra,* at p. 735.)

Words and phrases are construed in light of the statutory scheme. (*People v. Hernandez* (1988) 46 Cal.3d 194, 201 [249 Cal.Rptr. 850, 757 P.2d 1013], disapproved on another ground in *People v. King* (1993) 5 Cal.4th 59, 78, fn. 5 [19 Cal.Rptr.2d 233, 851 P.2d 27]; *Lungren v. Deukmejian, supra,* 45 Cal.3d at p. 735.) They will not be construed in such a way as to render related provisions nugatory. (*Lungren, supra,* at p. 735.) Additionally, in enacting a statute, the Legislature is deemed to have been aware of statutes and judicial decisions interpreting them already in effect and to have enacted the statute in light of them. (*Hernandez, supra,* at p. 201.) Moreover, the legislative history of a statute is a legitimate and valuable aid in its interpretation (*California Mfrs. Assn. v. Public Utilities Com., supra,* 24 Cal.3d at p. 844.)

■ As previously noted, WCJ's, as civil service employees, retain the procedural rights provided under the State Civil Service Act. (Cal. Code Regs., tit. 8, § 9723, subd. (a); see Gov. Code, § 19574 et seq.) The Legislature is deemed to have been aware of the provisions of the State Civil Service Act when it amended Labor Code section 123.6 to require the administrative director to adopt implementing regulations. (*People v. Hernandez, supra,* 46 Cal.3d at p. 201.) With the backdrop of the State Civil Service Act, the Legislature's broad language in Labor Code section 123.6, subdivision (a), "[t]o *the extent possible,*" and "*consistent with*" (italics

added), must be construed to afford the administrative director considerable discretion in adopting regulations that gave effect to the Legislature's intent without negating the provisions of the Civil Service Act. (*Lungren v. Deukmejian, supra*, 45 Cal.3d at p. 735.)

Again as previously noted, the purpose of the amendment to Labor Code section 123.6 was to address the problems of corruption and misconduct among WCJ's and of "limited and sporadic" training for WCJ's. (Assem. Fin. & Ins. Com., Analysis of Assem. Bill No. 1252 (1993-1994 Reg. Sess.) Aug. 24, 1993.) The Legislature wanted to "provide a mechanism to ensure that workers' comp. referees are aware of and are engaging in ethical conduct." (*Ibid.*) The purpose was not to protect the procedural rights of WCJ's. The requirement that the regulations be consistent with Commission rules must be read in this light. (Code Civ. Proc., § 1859; *People v. Gardeley, supra*, 14 Cal.4th at p. 621.) The regulations adopted are to be, "[t]o the extent possible, . . . consistent with the procedures established by the Commission on Judicial Performance for *regulating the activities* of state judges" (Lab. Code, § 123.6, subd. (a), italics added), not for protecting the rights of state judges.

Appellant makes no showing that the regulations adopted by the administrative director are not consistent with the Commission rules in terms of regulating the activities of WCJ's, ensuring they receive proper training and do not engage in unethical behavior. Therefore, he has not demonstrated that the regulations adopted by the administrative director pursuant to Labor Code section 123.6 " ' "(1) [are not] 'within the scope of the authority conferred' [citation] and (2) [are not] 'reasonably necessary to effectuate the purpose of the statute' [citation]." ' " (*Yamaha Corp. of America v. State Bd. of Equalization, supra*, 19 Cal.4th at p. 11.) He has not demonstrated that he is entitled to a writ of mandate to compel the administrative director to adopt different regulations. (*Common Cause v. Board of Supervisors, supra*, 49 Cal.3d at p. 442; *Transdyn/Cresci JV v. City and County of San Francisco, supra*, 72 Cal.App.4th at p. 752.) Hence, he has not demonstrated that the trial court erred in sustaining the demurrer to his writ of mandate cause of action. (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra*, 68 Cal.App.4th at p. 459; *Coutin v. Lucas, supra*, 220 Cal.App.3d at p. 1020.)

## II

Appellant also contends the trial court erred in denying his petition for writ of administrative mandate. Again, we disagree.

In reviewing the trial court's determination, this court's duty is to determine whether the Board's decision was supported by the findings and

the findings by substantial evidence or whether the Board abused its discretion by failing to proceed in the manner required by law. (Code Civ. Proc., § 1094.5, subds. (b), (c); *Desmond v. County of Contra Costa* (1993) 21 Cal.App.4th 330, 334-335 [25 Cal.Rptr.2d 842].) In making our determination, we examine all relevant evidence in the entire administrative record. (*Desmond, supra,* at p. 335.) We view the evidence in the light most favorable to the judgment, resolving all conflicts in the evidence and drawing all inferences in support of the judgment. (*Board of Education v. Jack M.* (1977) 19 Cal.3d 691, 697 [139 Cal.Rptr. 700, 566 P.2d 602]; *Rivard v. Board of Pension Commissioners* (1985) 164 Cal.App.3d 405, 412-413 [210 Cal.Rptr. 509].) Substantial evidence is defined as evidence of " ' " ' "ponderable legal significance . . . reasonable in nature, credible, and of solid value[, and]" ' " . . . " 'relevant evidence that a reasonable mind might accept as adequate to support a conclusion' " . . . .' " (*Desmond, supra,* at p. 335, citations omitted; see *Rivard, supra,* at p. 413.)

Moreover, it is presumed that the Board regularly performed its duty. The burden is on appellant to prove an abuse of discretion by failing to proceed in the manner required by law or making a decision unsupported by substantial evidence. (*Desmond v. County of Contra Costa, supra,* 21 Cal.App.4th at pp. 335-336.)

 Appellant first claims the Board abused its discretion by failing to proceed in the manner required by law, i.e., according to regulations which complied with Labor Code section 123.6, subdivision (a). As discussed in part I, *ante,* we reject this claim.

Appellant next challenges the Board's finding of dishonesty, claiming there is no substantial evidence he did not "believe" he had no cases "pending and undetermined for 90 days after [being] submitted for decision" (Lab. Code, § 123.5, subd. (a)) when he signed affidavits to that effect. He was required to submit such affidavits "based upon information and belief." (Cal. Code Regs., tit. 8, § 9714, subd. (a).)

Appellant's argument is based upon his testimony that he believed he was in compliance with this requirement if he gave his secretary a handwritten decision within the 90-day period and on the evidence other WCJ's shared that belief. He acknowledges the evidence he was told differently by his supervisor. He also acknowledges "that his view in the face of management's position may have been naïve, and that his ignoring of management's view may have been arrogant, and unreasonable." He nonetheless argues that, in view of the evidence of his belief, respondents did not prove dishonesty on his part.

Appellant's "testimony presented a factual determination for the trier of fact." (*Cvrcek v. State Personnel Bd.* (1967) 247 Cal.App.2d 827, 832 [56 Cal.Rptr. 84].) It was up to the Board to make the determination based on his testimony and the other evidence whether he honestly believed he was in compliance with this requirement if he gave his secretary a handwritten decision within the 90-day period or he was being dishonest when he took that position in the face of instruction from his supervisor that his position was incorrect and he would be held accountable if he acted in accordance with his position. What he terms "naïve, . . . arrogant, and unreasonable" "undoubtedly will strike reasonable minds with different force" (*id.* at p. 830), appearing as dishonest. Accordingly, substantial evidence supports the Board's finding that appellant acted with dishonesty when he signed the affidavits in question. (*Desmond v. County of Contra Costa, supra,* 21 Cal.App.4th at p. 335.)

Appellant next challenges the Board's finding that Rentzer did not accept his invitations. This finding appears in an unsigned proposed decision in the administrative record. The signed decision contains no such finding. Rather, it contains a finding that "when appellant initially asked Rentzer if she would like to accompany him on non work-related excursions, she replied 'Yeah, sure' or words to that effect. Given such a response, it was not entirely irrational for appellant to at least initially believe that his overtures toward Rentzer were acceptable to her." Accordingly, appellant's challenge is not well taken.

The judgment is affirmed.

Ortega, J., and Mallano, J., concurred.