Filed 1/3/22  Miller v. Novotney CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CURTIS E. MILLER, | B305609 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 18STCV04412) |
| v. | |
| RALPH JOSEPH NOVOTNEY, JR., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

Curtis E. Miller, in pro. per., for Plaintiff and Appellant.

Charlston, Revich, Harris & Hoffman and Tim Harris, for Defendants and Respondents.

Curtis E. Miller appeals from a judgment dismissing his lawsuit against his former criminal counsel, Ralph Joseph Novotney, Jr., and Christina Hohman (collectively, respondents), following respondents' successful demurrer without leave to amend. Miller's complaint sought to recover for emotional distress he alleges he suffered as a result of statements respondents made during a hearing, although he concedes the statements did not affect the outcome of the underlying criminal proceedings. We conclude that Miller's complaint fails to allege facts sufficient to support the damages element of his breach of fiduciary duty claim, and thus that the trial court properly sustained the demurrer. Nor has Miller identified how he might amend the complaint to address this deficiency, so we find no error in the court's denial of leave to amend.

Miller also challenges the trial court's denial of his motion for telephonic appearance at the demurrer hearing. Miller is incarcerated and argues this ruling improperly denied him meaningful access to the court. Even assuming (without deciding) that the trial court erred in denying the motion, such error could not have prejudiced Miller, because the operative complaint fails to state a claim on which relief can be granted, and Miller's participation in the hearing would not have changed that.

Accordingly, we affirm.

## FACTS AND PROCEEDINGS BELOW

In reviewing a judgment of dismissal after a demurrer " 'we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable.' " (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 171.) We may consider such facts, as well as those that may be reasonably implied or inferred therefrom. (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318

2

(*Blank*); *Young v. Gannon* (2002) 97 Cal.App.4th 209, 220 (*Young*); Code Civ. Proc., § 430.30.) We may not consider contentions, deductions or conclusions of fact or law. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 (*Zelig*).) Accordingly, the following factual background summary is based solely on the operative complaint and those documents of which judicial notice has been taken, accepting as true all properly pleaded factual allegations and facts reasonably inferred therefrom.

## A.     *Alleged Factual Basis for Miller's Lawsuit*

In 1997, Miller was convicted of being a felon in possession of a firearm. The jury also found true allegations that Miller had suffered convictions for kidnapping and robbery in 1980, rendering his 1997 conviction a third strike for the purposes of sentencing under the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)−(i), 1170.12, subds. (a)−(d)).[1] Miller was sentenced to 25 years to life, and this court affirmed the judgment in an unpublished opinion.

In 2012, following the passage of Proposition 36, the Three Strikes law was amended to provide that, absent specified exceptions, an offender with two or more prior strikes is to be sentenced as a two-strike offender unless the new offense is a serious or violent felony. (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 169−170.) Further amendments created post-conviction resentencing proceedings, set forth in section 1170.126, through which certain inmates sentenced under the pre-2012 version of the Three Strikes law could petition for recall of their sentence and resentencing (*Yearwood, supra*, 213

---

[1] Unless otherwise indicated, all undesignated statutory references are to the Penal Code.

Cal.App.4th at pp. 169–170), subject to certain eligibility criteria. (§ 1170.126, subd. (c).)

On March 1, 2013, the Post Conviction Assistance Center (PCAC) filed such a section 1170.126 petition on Miller's behalf, seeking recall of his 1997 sentence and resentencing under the Three Strikes law. The trial court issued an order to show cause why the petition should not be granted, and appointed respondents, attorneys with PCAC, to represent Miller in connection with his petition. The Los Angeles County District Attorney (District Attorney) opposed Miller's petition, and Novotney was granted several extensions of time for filing a reply. Shortly after Novotney requested the ninth such extension, on May 27, 2015, Miller "mail[ed] . . . a[ ] request for substitution of counsel" to "(1) the court, (2) [the District Attorney], [and] (3) PCAC." On June 16, 2015, Novotney nevertheless filed a reply in support of Miller's section 1170.126 petition.

On June 29, 2015, Novotney wrote Miller a letter "inform[ing] [Miller] that despite [Miller's] request for substitution of counsel, the court had not relieved PCAC as counsel" and that "[t]herefore, PCAC control[led] the litigation and decide[d] what and when to file within the litigation."

On July 2, 2015, Miller filed with the court an "objection to PCAC filing [a] reply . . . [in support of Miller's section 1170.126 petition]" that "also request[ed] . . . he be granted pro[.] per[.] status (self-representation)." On July 9, 2015, Novotney wrote Miller a letter in which Novotney "argued that [Miller] had no right to self-representation, and that PCAC control[led] the litigation."

4

On July 31, 2015, Miller submitted to the court an
" 'advisement and waiver of right to counsel' (*Faretta*[2] waiver),"
which was received and placed in the court file.  (Capitalization
omitted and italics added.)  On August 12, 2015, Miller filed
a "request to proceed pro se."

The hearing on Miller's resentencing petition took place
on August 17, 2015.[3]  Novotney appeared on Miller's behalf.  At
the outset of the hearing, the court indicated it had received a
*Faretta* waiver from Miller.  The court asked Novotney whether he
was aware that Miller had filed a *Faretta* waiver and that Miller
"wishe[d] to represent himself."  Novotney responded that Novotney
was "the one that signed the *Faretta* waiver" but that he was not
"aware that [Miller] had actually filed it."  Novotney further
indicated that Miller had "been doing a lot of writing and filing
petitions, and those types of things."  The court noted that Miller
had also filed two motions to reassign the case to a different judge
under Code of Civil Procedure section 170.6, both of which the court

[2] *Faretta v. California* (1975) 422 U.S. 806.

[3] On our own motion, we take judicial notice of the reporter's
transcript from the August 17, 2015 hearing, contained in the
appellate record for *People v. Miller* (Dec. 20, 2016, B266611)
[nonpub. opn.], Miller's appeal from the denial of his resentencing
petition.  The transcript is a "[r]ecord[ ] of . . . [a] court of this state,"
of which we may properly take judicial notice.  (Evid. Code, § 452,
subd. (d).)  As a matter properly judicially noticed, we may consider
it in deciding Miller's appeal.  (See Code Civ. Proc., § 430.30; see
also, e.g., *Byrne v. Harvey* (1962) 211 Cal.App.2d 92, 108, fn. 10
[augmenting record on appeal with record from related appeal].)
We may also consider it on the basis that it is a material document
referenced in the allegations of the complaint.  (See *Blank, supra,*
39 Cal.3d at p. 318; *Young, supra,* 97 Cal.App.4th at p. 220.)

denied as untimely. Novotney responded by indicating that Miller had "also filed a request for new counsel" and "a motion to withdraw his reply." Novotney then offered: "My position, Your Honor, is that I'm not sure [Miller's] unequivocally requested to represent himself since his previous request for a new lawyer . . . I did not feel compelled to get this issue to the court's attention. It did not appear to me that there was an unequivocal request for self-representation. I guess the other question is whether that is timely since [we are] ready to proceed."

The court denied Miller's request to represent himself, noting: "The *Faretta* form was received July 29th. I think its untimely and not an unequivocal request."

The court then considered Miller's section 1170.126 petition and ultimately denied it on the grounds that Miller was ineligible for resentencing under an exclusion that applies if "[d]uring the commission of the current offense [that is, the offense which the resentencing petition targets], the defendant . . . was armed with a firearm or deadly weapon." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii), 1170.126, subd. (e)(2); see *People v. Bradford* (2014) 227 Cal.App.4th 1322, 1327.)

Novotney filed a notice of appeal from the court's denial of his section 1170.126 petition, and this court affirmed. (See *People v. Miller*, *supra*, B266611.)

In connection with that unsuccessful appeal, on approximately March 17, 2017, Miller received "the trial court record lodged with the Court of Appeal," which contained a transcript of the section 1170.126 petition hearing. In reading the transcript, Miller first "discovered the acts and/or omissions of . . . Novotney" during that hearing: namely, Novotney's representations and arguments to the court regarding Miller's request to represent himself and the *Faretta* waiver.

### B.	*Miller's Lawsuit Against Respondents*

On November 16, 2018, Miller filed a complaint against respondents alleging "[i]ntentional [t]ort" and "personal injury" causes of action, as a result of which Miller alleged he suffered "severe[/]chronic mental anguish" and "physical injury."  Miller sought compensatory, punitive, and nominal damages.

Thereafter, Miller filed the first amended complaint (FAC), which appears to be substantively identical to Miller's initial complaint.  The FAC alleges the Novotney's actions as outlined above "were undertaken without the ordinary care due [Miller]," constituted "willful and conscious disregard of [his] rights," and "were outrageous, undertaken with wanton and reckless disregard of the consequences to [Miller], causing [Miller] severe, chronic mental anguish, loss of enjoyment of life, insomnia, nausea, and loss of ap[p]etite."  Miller characterizes the FAC as alleging a claim for intentional breach of fiduciary duty.

### C.	*Respondents' Demurrer to the FAC*

Respondents demurred to the FAC, arguing that Miller's claims were untimely, were legal malpractice claims that could not proceed absent allegations that Miller was actually innocent, and that Miller had not suffered any actual damages, given that his section 1170.126 petition would have been denied in any event.  Miller filed an opposition to the demurrer, as well as a request to appear telephonically at the demurrer hearing.  The record contains a single proof of service attesting to Miller's service of these filings.  It appears this proof of service was attached only to Miller's opposition to the demurrer, not to the request for a telephonic appearance, and that the proof was not filed as a freestanding document.

At the March 4, 2020 hearing on the demurrer, the court denied Miller's request to appear telephonically on the ground that Miller failed to attach a proof of service thereto, which rendered the request an improper ex parte communication that did not comply with applicable court rules.[4] The court then sustained respondents' demurrer to the FAC without leave to amend, noting that Miller had not requested leave to amend in his opposition, and dismissed the case with prejudice. The record does not contain a reporter's transcript from the hearing, and the minute order does not indicate the basis for the court's ruling on the demurrer.

### D.    *The Instant Appeal*

Miller timely appealed (1) the judgment dismissing the case with prejudice after sustaining respondents' demurrer, and (2) the "[o]rder denying telephonic appearance ([a]ccess to the court[s])."

---

[4] On June 2, 2021, this court provisionally granted Miller's request that we take judicial notice of two documents, one of which was a document captioned "California correctional institution confidential/legal mail log outgoing history." (Capitalization omitted.) The document indicates that Miller had mailed certain unspecified documents to the respondents and the Los Angeles County Superior Court on February 19, 2020. Based on his briefing, it appears Miller seeks to rely on this to establish service of the motion to appear telephonically. We hereby deny the request that we take judicial notice of this document, but note that it would not have affected our analysis on appeal in any event. For reasons discussed below, even if this document were to help Miller establish the trial court erred in denying his request for telephonic appearance, such error would not be a basis for appellate relief, as Miller has not established any prejudice from the denial. (See Discussion, part B, *post*.)

8

In his notice designating the record on appeal, Miller checked boxes indicating that he "choose[s] to proceed" "without a record of the oral proceedings . . . in the superior court" (capitalization omitted) and that he "understand[s] that without a record of the oral proceedings in the superior court, the Court of Appeal will not be able to consider what was said during those proceedings in deciding whether an error was made in the superior court proceedings." (Capitalization omitted.) Miller did not check the box indicating that he elected to proceed with "[a] settled statement under [California Rules of Court,] rule 8.137."

Several months after appealing the judgment, Miller filed a writ petition based on the denial of his request to appear telephonically and the lack of a reporter's transcript from the demurrer hearing.[5] On these bases, the petition asked this court to (1) stay the instant appeal; (2) vacate the superior court's order sustaining the demurrer to the FAC and resulting judgment, and (3) order the trial court to conduct a new hearing on the demurrer. This court denied the writ petition.

---

[5] Another document of which Miller requested we take judicial notice is respondents' November 20, 2020 "opposition to [Miller's] request for stay and writ of mandate." (Capitalization omitted.) We hereby grant the request as to that document. (See Evid. Code, § 452, subd. (d).) On our own motion, we also take judicial notice of this court's order denying Miller's writ petition. (See *id.*, subd. (c).)

## DISCUSSION

### A. The Trial Court Did Not Err in Sustaining the Demurrer to the FAC

We review the trial court's decision sustaining respondents' demurrer de novo (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 433), and must affirm the judgment "if there is any ground on which the demurrer could have been properly sustained." (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052 (*Intengan*).)

#### 1. *Parties' respective characterizations of the alleged harm on which Miller bases his claim*

The parties' arguments reflect two very different characterizations of the harm for which Miller seeks compensation via the FAC. According to respondents, the FAC seeks damages based on the outcome of Miller's request to represent himself and section 1170.126 petition. Respondents describe Miller's claim as relying on the following logic: had Novotney acted differently at the hearing, Miller would have been permitted to represent himself and this would have in turn led to the court granting the resentencing petition. Miller insists, by contrast, that his claim seeks compensation for the emotional distress he suffered as a result of his counsel incorrectly advising him that he had no right to represent himself in connection with his reclassification and resentencing petition, as well as the further emotional distress he suffered when he learned that Novotney had made certain statements at the hearing on the petition. According to Miller, these damages have nothing to do with the court's rulings at the hearing.

The allegations in the FAC support Miller's characterization of his claim, not respondents'. Specifically, the FAC neither alleges nor implies that, but for respondents' actions, Miller would have been allowed to represent himself or would have been granted resentencing. Nor does the FAC seek damages that depend on such a but-for chain of causation.

With the correct characterization in mind, we turn to the issues raised on appeal.

## 2. *Statute of limitations*

Respondents contend that Miller's claim is time-barred, and that we may affirm the trial court's decision on this basis. Miller disagrees, arguing that the applicable limitations period did not begin to run until he discovered the basis for his claims in March 2017, when he received the transcript of the August 2015 proceedings. (See *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 [limitations period begins when cause of action accrues, and " 'discovery rule' . . . postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action"].) Only upon receiving the transcript, Miller argues, did he have reason to know that Novotney's advice regarding self-representation was incorrect, and only then did he learn what Novotney had said during the hearing regarding his *Faretta* waiver. Respondents counter that, long before Miller received the hearing transcript, Miller had a reasonable basis for suspecting that the court had denied his section 1170.126 petition and self-representation request. (See *Fox v. Ethicon Endo-Surgery, Inc.*, *supra*, at p. 807.) As explained above, however, the FAC alleges a cause of action based not on the outcome of the hearing, but rather on statements Novotney made during the hearing and advice Miller only realized was incorrect based on statements

11

during the hearing.  The denial of Miller's self-representation request was completely in line with the advice he had received from his attorney, and did not give Miller cause to suspect Novotney had said anything at the hearing adverse to Miller's self-representation request or that Novotney's advice had been wrong.  (See *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110 ["[u]nder the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her"].)  Nor have respondents identified any other basis on which Miller should have known about Novotney's conduct at the hearing before he reviewed the transcript, or any way in which Miller failed to exercise reasonable diligence by not reviewing the transcript sooner.  (See *Samuels v. Mix* (1999) 22 Cal.4th 1, 8 ["the burden of proving plaintiff's actual or constructive discovery of defendant's wrongdoing in connection with that defense falls statutorily to defendant"].)

Because the applicable one-year limitations period was tolled until Miller's review of the transcript in March 2017, and then tolled again for two years based on his incarceration, he effectively had three years after that March 2017 discovery in which to file his complaint.  (See Code Civ. Proc., § 352.1, subd. (a) ["[i]f a person entitled to bring an action . . . is, at the time the cause of action accrued, imprisoned on a criminal charge . . . time of that [incarceration] is not a part of the time limited for the commencement of the action, not to exceed two years"]; *id.*, § 340.6, subd. (a) ["[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful

12

act or omission"].)  Miller's initial November 2018 complaint, filed approximately 20 months after that discovery, was thus timely filed.

### 3. *Failure to allege legally cognizable damages*

Although timely filed, the FAC does not allege facts to support that Miller suffered legally recoverable damages as a result of respondents' conduct.[6]  It thus fails to allege a necessary element of Miller's intentional breach of fiduciary duty claim.[7] (See *International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 614 [" 'until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice'"]; *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 ["[t]he elements of a cause of

---

[6] On appeal, respondents raise various other arguments as to why the trial court properly sustained their demurrer to the FAC.  Because we conclude the FAC fails to state a claim by not alleging legally cognizable damages, we need not and do not consider whether the other issues the parties have briefed are additional bases on which the demurrer might also have been properly sustained.

[7] The FAC does not identify the cause of action it attempts to state, except to the extent that the civil case cover sheet indicates it is an "intentional tort" and "personal injury" action. On September 13, 2021, this court requested the parties provide supplemental briefing on whether "the first amended complaint sufficiently state[s] a cause of action if the damages it seeks stem neither from the denial of Mr. Miller's petition for resentencing, nor the denial of his request to represent himself" and "if so, which cause(s) of action."  In response, as he did in his initial briefing, Miller characterized the FAC as stating a claim for intentional breach of fiduciary duty, and we analyze it as such.

action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and damages"].)

As discussed above, the damages Miller alleges to have suffered consist of (1) Miller's emotional distress when he believed, per Novotney's advice, that he had no right to represent himself in connection with his section 1170.126 petition, and (2) Miller's emotional distress when he learned of Novotney's statements to the court regarding his *Faretta* waiver. "Damages for emotional distress have been permitted only where there is some means for assuring the validity of the claim." (*Merenda v. Superior Court* (1992) 3 Cal.App.4th 1, 8 (*Merenda*), disapproved of by *Ferguson v. Lieff, Cabraser, Heimann & Bernstein* (2003) 30 Cal.4th 1037; see *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 926–927 (*Molien*).) Courts have employed various analytical approaches to determining the likely validity of an emotional distress damages claim. Regardless of which of these approaches we employ, the FAC contains no such indicator of likely validity, and the emotional damages it seeks are thus not legally cognizable.

> a. *Miller has not alleged the extreme and outrageous conduct necessary to permit emotional distress to alone satisfy the damages element of his claim*

When the tortious conduct at issue causes some damage in addition to emotional distress, this may, depending on the nature of such additional damage, assist in establishing the validity of the emotional distress claim. For example, emotional distress damages are generally recoverable when they are alleged to result from physical injury caused by defendant's conduct. (See *Merenda, supra,* 3 Cal.App.4th at pp. 7–8.) Conversely, assuring the validity of emotional distress damages when—as here—they are the only damages a plaintiff claims to have suffered poses a particular

challenge. (*See id.* at p. 7.) Nevertheless, "intentional torts [can] support an award of damages for emotional distress alone . . . in cases involving 'extreme and outrageous intentional invasions of one's mental and emotional tranquility.' " (*Molien, supra,* 27 Cal.3d at p. 927; see *Commercial Cotton Co. v. United California Bank* (1985) 163 Cal.App.3d 511, 517 ["while damages for emotional distress unaccompanied by physical injury may be awarded in a tort action arising out of a breach of a . . . [duty], the injuries suffered must be severe, i.e., substantial or enduring as distinguished from trivial or transitory"], disapproved of on other grounds by *Roy Supply, Inc. v. Wells Fargo Bank* (1995) 39 Cal.App.4th 1051; accord, *Young v. Bank of America* (1983) 141 Cal.App.3d 108, 114−115; *id.* at p. 111 [applying same rule to statutory cause of action based on bank's "refus[al] to remove [unauthorized] charges from [plaintiff's] account" and "knowing[ ] communica[ion] [of] . . . erroneous credit information to a credit reporting service"]; see also *Smith v. Superior Court* (1992) 10 Cal.App.4th 1033, 1040 (*Smith*) ["where a plaintiff sufficiently alleges intentional or affirmative misconduct by an attorney . . . recovery of emotional distress damages is permitted"].) Under such circumstances, "the outrageous conduct affords the necessary assurance of the validity of the [emotional distress] claim." (*Merenda, supra*, 3 Cal.App.4th at p. 9.)

Consistent with these general principles, cases permitting recovery for intentional attorney conduct that caused the plaintiff emotional distress but no other damages involve extreme or outrageous behavior and a heightened showing of such distress. (See, e.g., *McDaniel v. Gile* (1991) 230 Cal.App.3d 363, 370, 373 (*McDaniel*).) Courts have similarly recognized a negligent malpractice cause of action seeking only emotional distress damages where the conduct at issue was "egregious." (See, e.g.,

*Betts v. Allstate Ins. Co.* (1984) 154 Cal.App.3d 688, 715, 718 (*Betts*).)  In *McDaniel*, for example, the Court of Appeal reversed a summary adjudication in favor of an attorney on a former client's intentional infliction of emotional distress claim against him.  After the client "refused to have sexual relations with [the attorney]," the attorney "abandoned her" by "fail[ing] to '. . . appear in court to represent [her] interests [in a marital dissolution proceeding], negotiate a complete and fair property settlement . . . , properly advise [her] of [her] rights,' return her phone calls, or take any action at all except after numerous requests."  (*McDaniel, supra*, 230 Cal.App.3d at p. 370.)  In concluding that a triable issue of fact existed, the Court of Appeal relied on the outrageous nature of the conduct at issue, explaining that the attorney "had a special relationship with [the client] in that . . . [he] was her attorney representing her in a dissolution of marriage proceeding," that she "was peculiarly susceptible to emotional distress because of her pending marital dissolution," and that "[t]he withholding by a retained attorney of legal services when sexual favors are not granted by a client and engaging in sexual harassment of the client constitute[s] acts of outrageous conduct under these circumstances." (*Id.* at p. 373.)

In *Betts*, after a conflict of interest between the attorney and the plaintiff's insurer had become "unmistakable, [the attorney] actively work[ed] to protect [the insurer] and persist[ed] in manipulating [plaintiff] against her own best interests; . . . assist[ed] in manufacturing a false record against the time when a bad faith lawsuit might be instituted; . . . rather than advising consultation of independent counsel as possible or desirable, resist[ed] the efforts of such counsel to become informed when finally retained; . . . [and] discourage[ed] [plaintiff's] assignment of rights in exchange for personal release and influencing her instead

in the direction of bankruptcy." (*Betts, supra*, 154 Cal.App.3d at p. 717.)  The Court of Appeal upheld a jury verdict for the plaintiff based on special findings that this conduct had caused the plaintiff emotional distress, even though she had not been damaged in any other way, because the "conduct was so egregious." (*Id.* at p. 715.)

The FAC alleges no conduct that is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 496.)  Novotney informing Miller that he had no right to self-representation in connection with his section 1170.126 petition was at most arguably erroneous legal advice, although the state Supreme Court has not yet spoken on this issue.[8]  Incorrect legal advice, without some allegation of ulterior motive or like conduct, is not " 'beyond all possible bounds of decency' " or " 'to be regarded as atrocious, and utterly intolerable

---

[8] No case directly addresses self-representation in the context of section 1170.126 petitions, but our state Supreme Court has rejected a right to self-representation in other proceedings related to criminal prosecution. (*In re Barnett* (2003) 31 Cal.4th 466, 473−474 & 475−476 (*Barnett*).)  Namely, "[i]nmates . . . have no state [or federal] constitutional right to self-representation in habeas corpus proceedings." (*Id.* at pp. 475–476; see *id.* at pp. 473−474.)  The same is true as to criminal appeals. (*Id.* at p. 473.)  As our high court explained in *Barnett*, on appeal "the balance between a criminal defendant's interest in acting as his or her own lawyer and a state's interest in ensuring the fair and efficient administration of justice 'surely tips in favor of the [s]tate' once the defendant is no longer presumed innocent but found guilty beyond a reasonable doubt" (*ibid.*), and " '[p]ostconviction relief is even further removed from the criminal trial than is discretionary direct review [on appeal].' " (*Id.* at p. 474.)

in a civilized community.'" (*Cochran, supra,* 65 Cal.App.4th at p. 496.)

Nor does it constitute outrageous conduct sufficient to permit emotional distress damages that Novotney told the court he was not certain Miller's request was unequivocal, or that Novotney noted the court should consider the timeliness of the request—an issue of which the court was already aware, having noted at the outset of the hearing that Miller filed his *Faretta* waiver "just a few days . . . prior to [the] hearing."[9]  Reading the complaint in the light most favorable to Miller, these statements may have been inconsistent with Novotney knowing that Miller had been attempting to substitute out PCAC as his counsel (although not necessarily to represent himself) for several months.  But they are not so clearly improper or adverse to Miller as to be inherently outrageous and extreme—particularly given that the FAC does not allege facts supporting that the statements affected the outcome of the proceedings in any way.

Thus, the FAC does not allege extreme and outrageous conduct sufficient to state a claim relying solely on emotional distress to satisfy the damages element of Miller's claim.

---

[9] Novotney's comment to this effect was not tantamount to Novotney "argu[ing]" that Miller's request was untimely.  The FAC's characterization of the comment in this way is a contention, not a factual allegation, and we thus need not accept it.  (See *Zelig, supra*, 27 Cal.4th at p. 1126 [deductions, argument, and contentions in a pleading need not be accepted as true in reviewing demurrer ruling].)

b.     *The FAC allegations do not support recovery of emotional distress damages based on foreseeability*

As an alternative ground for our opinion, cases have analyzed whether a plaintiff may seek emotional distress damages—whether or not accompanied by other claimed damages—based on policy factors and the foreseeability of emotional distress resulting from the allegedly tortious conduct at issue.  Under this framework, an "attorney's conduct—while not necessarily intentional or in bad faith—[may be] so reckless and the resulting [emotional distress] damage is so foreseeable that imposition of liability is proper." (*Pleasant v. Celli* (1993) 18 Cal.App.4th 841, 854, disapproved of on other grounds by *Adams v. Paul (*1995) 11 Cal.4th 583; *Smith, supra,* 10 Cal.App.4th at p. 1039 [allegations in complaint "reflect[ed] no basis for concluding it was reasonably foreseeable [attorney] handling of the [plaintiff's marital] dissolution would result in emotional injury to plaintiff, separate and apart from that which every family law litigant suffers"].)  Under such circumstances, the foreseeability of emotional distress resulting from the conduct at issue serves as the requisite means of assuring the validity of the emotional distress claimed.  (*Merenda, supra,* 3 Cal.App.4th at pp. 6, 8.)

The FAC fails to allege legally cognizable emotional distress damages when analyzed in terms of foreseeability.  Namely, the FAC does not allege actions by respondents, a foreseeable consequence of which is that Miller would suffer serious emotional distress.  Neither Novotney's advice regarding Miller's right to self-representation, nor his commentary at the hearing, is inherently so upsetting that "emotional distress *naturally* ensues [there]from." (*Merenda, supra*, 3 Cal.App.4th at pp. 6, 8, italics added; *id.* at pp. 10–11 [plaintiff not permitted to seek emotional distress

19

damages based on losing lawsuit against man who sexually assaulted her because losing the lawsuit was not something inherently likely to upset her emotional calm beyond the baseline level of distress associated with litigation].)  Of course, criminal cases generally have the potential to affect a defendant's liberty interest, and it is certainly foreseeable that actions affecting such interest will result in emotional distress.  (See *Holliday v. Jones* (1989) 215 Cal.App.3d 102, 119 [wrongful incarceration of innocent man resulting from attorney malpractice basis for emotional distress damages based on conduct affecting liberty interest].)  Because Miller does not allege that respondents' actions affected the ultimate outcome of the resentencing petition, however, effects on Miller's liberty are not at issue.

Thus, the FAC does not sufficiently allege legally cognizable emotional distress damages under this alternative analytical framework either.

c.      *Miller's request for nominal damages does not justify reversal*

Miller urges that the demurrer was still improperly sustained, even if he failed to sufficiently allege actual damages, because the nominal damages he seeks under Civil Code section 3360 may satisfy the damages element of his claim. Civil Code section 3360 provides that "[w]hen a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages."  (Civ. Code, § 3360.)  Even assuming, for the sake of argument, that the FAC sufficiently alleges the other elements of a breach of fiduciary duty claim, we generally do not reverse a judgment in order for plaintiff to recover or seek solely nominal damages.  (See *Sweet v. Johnson* (1959) 169 Cal.App.2d 630, 633 ["the general rule is that the failure to award nominal damages is not alone ground for reversal

of a judgment or for a new trial"]; accord, *Elation Systems, Inc. v. Fenn Bridge LLC* (2021) 71 Cal.App.5th 958, 965.) Although there are exceptions to this rule (see *Sweet, supra,* 169 Cal.App.2d at p. 633), Miller does not argue, nor has he identified facts to support, that any such exception applies.

The FAC thus fails to allege any legally cognizable damages, which are an element of a breach of fiduciary duty claim, and the FAC thus fails to state a claim. On this basis alone, we must affirm the trial court's judgment following respondents' successful demurrer.

We note that, in his opening brief to this court, Miller did not challenge the trial court's denial of leave to amend, and that Miller has not identified any additional factual allegations he could plead to cure the deficiencies in the FAC. Therefore, the court also did not reversibly err in denying leave to amend. (See *Blank, supra*, 39 Cal.3d at p. 318 [when demurrer "sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment" and "[t]he burden of proving such reasonable possibility is squarely on the plaintiff"].)

### B. *Appeal from Court's Denial of Request to Appear Telephonically*

Miller also challenges the court's denial of his motion to appear telephonically at the hearing on respondents' demurrer. " 'Erroneous exclusion of the defendant' " from participation in judicial proceedings—even at "a critical stage of the proceedings"— is not structural error that is reversible per se, but trial error that is reversible only if the defendant proves prejudice. (*People v Santos* (2007) 147 Cal.App.4th 965, 974; accord, *People v. Johnson* (2013) 221 Cal.App.4th 943, 949; *People v. Perry* (2006) 38 Cal.4th 302, 312, citing *People v. Bradford* (1997) 15 Cal.4th 1229, 1357.) Miller has not identified any prejudice from his inability to

participate in the hearing on the demurrer. He does not explain, for example, how his participation in the March 4, 2020 demurrer hearing would have led the court to rule differently on the demurrer and/or to not dismiss the lawsuit. For the reasons set forth above, the FAC fails to state a claim on which relief can be granted. Miller's presence at the hearing could not have changed that. We thus need not determine whether the court erred in denying Miller's request to participate by phone in the hearing, because any such error would not be reversible in any event.

As to Miller's related arguments regarding the lack of a reporter's transcript or settled statement, it is unclear whether these are a separate basis on which Miller seeks relief, or part of his argument challenging the court's denial of his motion for telephonic appearance. Either way, even if the lack of such a record reflected error under the circumstances in this case, such error would not warrant appellate relief, as Miller has not identified any prejudice resulting therefrom. Miller suggests we will base our holding regarding the demurrer ruling and resulting judgment on an assumption that the judgment is valid and the lack of a reporter's transcript suggesting a contrary conclusion. We do not. Rather, as set forth above, we independently conclude the FAC fails to state a claim on which relief can be granted. A written record of the demurrer hearing would not have allowed Miller to successfully argue otherwise on appeal.

## DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

BENDIX, J.

CRANDALL, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.